THE BROOKLYN STEAM TRANSIT COMPANY, Appellant, *v.* THE CITY OF BROOKLYN, Respondent.

The Legislature in chartering a corporation has the power to provide that it may lose its corporate existence, without the intervention of the courts, by any omission of duty or violation of its charter, or default as to limitations imposed.

Where the language used shows the legislative intent was to make the continued existence of the corporation depend upon its compliance with some requirement of the charter, in case of non-compliance the powers, rights and franchises granted are forfeited and terminate ; it is not simply a cause of forfeiture to be enforced in an action by the attorney-general.

As to the effect of such a requirement it is immaterial whether it is contained in, and the corporation is organized under, a general law or a special charter.

A municipal corporation has the same right to question the corporate existence, and the rights of a railroad corporation seeking to use its streets, as a private owner would where the use of his property is sought.

Statement of case.

Plaintiff was incorporated under a special charter granted in 1871 (chap. 940, Laws of 1871), which contained a provision (§ 17) to the effect that unless it should be organized, and at least one mile of the road it was authorized to construct laid within three years, then "this act and all the powers, rights and franchises herein and hereby granted shall be deemed forfeited and terminated." By an act amending the charter (§ 4, chap. 61, Laws of 1873), the time for building one mile of the road was extended to July 4, 1876. Plaintiff organized under its charter within the time limited, transacted business, made by-laws, and procured surveys, plans and estimates for an elevated road. But it did not build any portion of its road until June, 1878, when it laid a mile of track outside of the city of Brooklyn. It commenced about the same time to lay down foundations for its road in the streets of said city when it was prevented from proceeding further by defendant. In an action to restrain defendant from such interference, *held*, that by failure to comply with the said requirements of its charter, plaintiff lost its corporate right to construct its road in the city streets, and that the interference of defendant was justified.

Also *held*, that the limitations of the charter were not abrogated by not being repeated in the amendatory act; that the two acts were to be taken and construed together, and the provisions of the former remained in force, save as modified by the latter.

Also *held*, that plaintiff was not kept in life by the act of 1875 (chap. 593, Laws of 1875), relieving from forfeiture railroad corporations then in default, as it was not then in default.

Also *held*, that this case was not affected by the act of 1879 (chap. 350, Laws of 1879), amending the said act of 1875, passed after the decision of the General Term herein, as only the errors alleged to have taken place in the court below would be considered, and the law could not be invoked to subvert a judgment legally pronounced.

It *seems*, that said amendatory act relates only to corporations not in default at the time of its passage and so did not apply to plaintiff.

It *seems*, also, that plaintiff was not relieved from the forfeiture, nor was its charter amended or modified by the provision of the general rapid transit act of 1875 (§ 36, chap. 606, Laws of 1875), providing that where the route or routes determined upon by commissioners appointed under said act connect with the route or routes of an existing corporation, such corporation shall have like power to construct its road upon fulfillment of the requirements and conditions imposed as a corporation organized under the act; as before that provision could have any application a coincidence of routes must appear as therein stated; also as said provision did not of itself nullify the limitations of plaintiff's charter; that if plaintiff desired to avail itself of said act, it should have complied with its provisions when it was a valid existing corporation; it could not wait until its charter had expired and then seek to get new life under that act.

(Argued October 7, 1879 ; decided November 11, 1879.)

APPEAL from judment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff to restrain defendant from interfering with the construction of its road in the defendant's streets.

The facts are set forth in the opinion.

*David Dudley Field,* for appellant. The condition imposed by section seventeen of the charter (Laws 1871, chap. 940), is not a condition precedent, or a limitation upon the grant of corporate power, which terminated the company's existence upon failure to perform, but is a condition subsequent, and the failure to perform is merely a cause of forfeiture which could only be taken advantage of by the State, and which the State could waive. (4 Kent's Com., 125–128; Crabb's Law of Real Estate ; 23 Wend., 537, 584; 9 id., 351; Gerard on Titles [2d ed.], 124, citing 5 Wall., 119; 6 Barb., 387; 20 id., 455; 2 Seld., 74; 46 Barb., 109;. 1 Smith's Lead. Cas. [Wall. & Hare's notes], p. 121, and cases there cited ; Potter on Corp., § 712; Angell & Ames on Corp., § 777; 3 Abb. New Cases, 408; *Ludlow* v. *Harlem R. R. Co.,* 12 Barb., 440; 8 Wend., 645; 11 Paige, 118; 23 Wend., 253; *Clark* v. *Jones,* 1 Den., 516; *McMillen* v. *Sar. R. R. Co.,* 20 Barb., 455; 5 Seld., 35; 35 Me., 345; *La Grange* v. *R. R. Co.,* 7 Coldwell [Tenn.], 432; *Nicoll* v. *N. Y. and Erie R. R. Co.,* 12 N. Y., 121; *In re Brooklyn, W. and N. R. R. Co.,* 72 id., 245.) The conditions imposed by the act of 1871 were changed and apportioned, and thus released and dispensed with by the act of 23d of May, 1873, and the company therefore holds its powers and franchises free, and discharged from the conditions imposed by the act of 1871. (*Dumpor's Case,* 2 Coke, 119; 1 Smith's Lead. Cas. [Wall. & Hare's notes], p. 93, etc.; 4 Taunt., 736; 14 Vesey, 173; 5 Taunt., 249; 17 Wend., 447; *Tinkham* v. *Erie R'way Co.,* 53 Barb., 393; Angell & Ames on

Corp., §§ 76–81; 3 Abbott's New Cases, 401; *Farmers' L. and T. Co.*, 3 N. Y., 470; *Gilbert Elevated R. R. Co.* v. *Anderson*, 3 Abb. New Cases, 434, 451.) A suit brought by a corporation cannot be defeated by showing that for any reason it has lost or forfeited its corporate rights. (Angell & Ames on Corp., §§ 635, 636.) In suits by corporations, which are created such *eo instanti*, by the passage of the law incorporating them, the company's existence is sufficiently proved by the production of the charter without any proof of user under it, and it is in judgment of law presumed to continue, until the contrary be shown by a judgment of forfeiture and dissolution. (9 Wend., 351; *Fire Department* v. *Kip*, 10 id., 266; Angell & Ames on Corp., § 635 [9th ed.], note.)

*William C. De Witt*, for respondent. Section 17 of chapter 940 of Laws of 1871 contains a limitation upon the original grant of corporate power to plaintiff. (*In re B., W. and N. R. R. Co.*, 72 N. Y., 245; *Queens County R. R. Co.*, Brooklyn Special Term; *In re Second Avenue M. E. Church*, 66 id., 398–399.) The mile of surface tract constructed was not such as was called for by the charter. (*Carman* v. *Pultz*, 21 N. Y., 547; *Deland* v. *Richardson*, 4 Den., 95.) The default of plaintiff was settled July 4, 1876, and could not be affected by the act of 1879. (Laws 1879, chap. 350; *Ely* v. *Horton*, 15 N. Y., 595.)

Earl, J. This action was commenced August 31, 1878, to restrain the defendant from interfering with the plaintiff in the construction of its road.

The action was defended upon the sole ground that the plaintiff did not have such corporate existence as authorized it to construct its road in the streets of the city, and whether it did have such existence, is the sole question for our determination.

The plaintiff was incorporated under the act chapter 940, of the Laws of 1871, entitled "An act to incorporate the

Brooklyn Steam Transit Company." The first section of the act provides that Samuel McLean and fifty-six other persons named shall be constituted a body politic and corporate, by the name of the Brooklyn Steam Transit Company, with authority to construct an underground and elevated railroad under or over the streets of that city in the manner specified in the act.

By section sixteen, the company was authorized to extend its road in and through any of the towns of the county of Kings.

Section seventeen provides as follows : " This act shall take effect sixty days after the passage thereof ; but unless said Brooklyn Steam Transit Company be organized, and at least one mile of such railroad, as it is authorized and empowered to construct under this act, be laid within three years thereafter, then and in that case this act and all the powers, rights and franchises herein and hereby granted, shall be deemed forfeited and terminated."

Under that act plaintiff was in some way organized, and then on the 23d day of May, 1873, an act was passed to amend the prior act, section one of which declares the corporation created by that act to be duly orgainzed whenever the ten per cent required by section eleven of that act shall have been paid in ; and thereafter $500,000 of plaintiff's stock was subscribed and ten per cent thereof was paid in, as required by the section eleven. Section three of the amendatory act authorizes the plaintiff to construct, operate and maintain its railroad as provided in the original act, with power to construct, operate and maintain the same over, under or upon any land not in any street or avenue necessary to connect the railroad with any street or avenue, and makes provision for compensation for land taken. Section four provides as follows : "The time for the construction of the one mile of railroad by the said corporation required by said first mentioned act is hereby extended to the fourth day of July, one thousand eight hundred and seventy-six."

From the time of its organization the plaintiff kept an office, transacted business, made by-laws, procured surveys,

plans and estimates for an elevated railroad, and made annual reports to the State engineer, which were by him reported to the Legislature. But it did not build or lay any portion of its railroad until June, 1878, when it built a mile of railroad by laying a mile of track upon the surface of a portion of its route outside of the city of Brooklyn ; and about the same time it commenced to lay down certain foundations for an elevated railroad within the city limits, when it was prevented from proceeding further by the defendant.

The claim of the defendant is that the plaintiff lost its corporate existence by not building one mile of its road before the expiration of the time limited, to wit, July 4, 1876.

The general principle is not disputed that a corporation, by omitting to perform a duty imposed by its charter or to comply with its provisions does not *ipso facto* lose its corporate character or cease to be a corporation, but simply exposes itself to the hazard of being deprived of its corporate character and franchises by the judgment of the court in an action instituted for that purpose by the attorney-general in behalf of the people ; but it cannot be denied that the Legislature has the power to provide that a corporation may lose its corporate existence without the intervention of the courts by any omission of duty or violation of its charter or default as to limitations imposed, and whether the Legislature has intended so to provide in any case depends upon the construction of the language used. Here the language used shows that the Legislature intended to make the continued existence of the plaintiff as a corporation depend upon its compliance with the requirements of section seventeen of the original act. In case of non-compliance the act itself was to cease to have any operation, and all the powers, rights and franchises thereby granted were to be " deemed forfeited and terminated." There was to be not merely a cause of forfeiture which could be enforced in an action instituted by the attorney-general, but the powers, rights and

franchises were to be taken and treated as forfeited and terminated. At the end of the time limited the corporation was to come to an end, as if that were the time limited in its charter for its corporate existence. A precise authority for this construction of this statute is found in the case of the *Brooklyn, Winfield and Newton Railroad Company* (72 N. Y., 245). That company was organized under the general railroad act of 1850, as amended by the act, chapter 775 of the Law of 1867. By the last named act it is provided that "if any corporation formed under the general act shall not, within five years after its articles of association are filed and recorded, begin the construction of its road and expend thereon ten per cent on the amount of its capital, or shall not finish its road and put it in operation in ten years from the time of filing its articles of association, as aforesaid, its corporate existence and powers shall cease." That company had not begun the construction of its road within the time limited, and it was held that it had lost its corporate existence, and the same view was emphatically reiterated when a similar case of the same company was again before this court (75 N. Y., 335). It was held that the statute executed itself, and that the intervention of the courts in an action instituted by the attorney-general was not necessary. The language of limitation used in section seventeen of the act of 1871, more plainly, if possible, indicates the legislative intention, that a failure to comply with the limitations should put an absolute end to the corporation, than the language used in the act of 1867.

An effort was made upon the argument of this case by the learned counsel for the appellant to distinguish this case from the one cited, but we can perceive no material difference between the two cases. In that case the company was fully organized, as it was in this. That company had a corporate existence to lose, and so had this. It is probably true, that this company in making surveys and plans within the three years may have done more than that company did, but that is immaterial, so long as it failed to do the precise thing

required by the statute.  In that case the proceeding was to
interfere with private property by the right of eminent
domain.  Here this company was proceeding to occupy the
public streets which were under the charge and control of
the city.  In the one case, as in the other, corporate exist-
ence and right were necessary to justify the act.  The city
must have as much right to question this use of its streets as
a private owner would to question the use of his property.
If a private owner could in such case question the corporate
existence of the company, the city must have the same right.
The fact that that company was organized under a general
law, while this is organized under a special law, can make
no difference.  A corporation organized under a general law
is upon precisely the same footing as one constitutionally
organized under a special law which contains all the pro-
visions of the general law.  Nor can the fact that this
company has already built one mile of its road distinguish
this case from the one cited.  If we are right thus far, it
built that line without any authority, and it did not acquire
thereby the right to enter the city and continue its wrongful
acts there.  But it is not necessary to determine in this case
what the status of the plaintiff would have been if it had
been operating its road upon the mile thus constructed.  It
is sufficient now to determine that it cannot wage an agres-
sive warfare either upon private property or the public
streets of the city of Brooklyn without further or other
legislative authority than it invoked upon the trial of this
action.

But it is claimed that because in section 4 of the act of
1873, the limitations contained in section 17 of the act of
1871 are not repealed, they are abrogated, and not now
applicable.  The two acts must be read and construed
together.  The amendments may be read as if incorporated
in the original act, and all the provisions of that act remain
in force, except as modified.  It cannot be supposed that the
Legislature intended to abrogate the limitations contained
in section seventeen, because they are in harmony with the

general policy of the law as evinced in most, if not all, the statutes for the formation of such corporations. But upon this point, too, the case cited is an authority adverse to the plaintiff. In that case there was an act passed in 1874, which provided " that the time within which the Brooklyn, Winfield and Newtown Railway Company is required by law to finish its road and put it in operation, is hereby extended for three years from and after the passage of this act." At the time of the passage of that act, that company had not commenced the construction of its road, although it was organized in 1869, and it was held that the only effect of that act was to extend the time for the performance of the conditions mentioned, and that for the non-performance, the consequences still followed, which are specified in the act of 1867 ; and that while the corporate existence of the company was extended for three years, it absolutely ceased then, because the construction of the road had not been commenced and finished within the time.

But the further claim is made that this corporation was kept in life by the act, chapter 598, of the Laws of 1875. The case cited is also an authority adverse to this claim. It was there held that that act applied only to corporations which at the time of its passage were in default for not constructing their roads within the time specified in their charters or articles of association.

This company was not then in default, as it had, by the act of 1873, until July 4, 1876, in which to construct one mile of its road.

After the appeal in this case was decided at the General Term, on the 25th day of May, 1879, an act was passed to amend the act of 1875, above referred to. It provides as follows : " Any existing railroad company heretofore organized or incorporated under the laws of this State, except such as may have been organized for the purpose of constructing or operating a railroad in the city of New York, which may be unable from any cause to construct its railroad within the time specified by its charter or articles of associ-

ation, shall hereby have the time for the completion of the railroad it was authorized to construct, extended for a further term of two years beyond the time heretofore limited ; and failure to construct its railroad within the time heretofore limited shall not cause a forfeiture of its corporate powers, but nothing herein contained shall have the effect to revive any corporation whose corporate power has been forfeited from any cause."

It is claimed that that act relieves the plaintiff from the forfeiture it had incurred, and that although it was not in existence when this case was tried, or when it was heard upon appeal in the Supreme Court, yet the judgment should be reversed on account thereof. It is a sufficient answer to this claim that we can consider here only such errors as are alleged to have taken place in the court below. That law cannot be invoked to subvert a judgment legally pronounced. It may, however, if it will bear the construction claimed for it by the plaintiff, form the basis of a new action or some new proceeding. But it may well be doubted if that act can in any way apply to the plaintiff. The original act of 1875 did not apply to the plaintiff, because it was not then in default. The amendatory act seems to be entirely prospective in its operation and to relate only to corporations not in default at the time of its passage, which might need the extended time to comply with the limitations contained in their charters.

The further claim is made that the charter of this company was amended by the general rapid transit act (chapter 606, of the Laws of 1875), section 36 of which is as follows : " Whenever the route or routes determined upon by said commissioners coincide with the route or routes covered by the charter of an existing corporation, formed for the purpose provided for by this act, provided that said corporation has not forfeited its charter or failed to comply with the provisions thereof requiring the construction of a road or roads within the time prescribed by its charter, such corporation shall have the like power to construct and operate such

railway or railways upon fulfillment of the requirements and
conditions imposed by said commissioners as a corporation
specially formed under this act," etc. Before that section
can have any application to this company, it must appear
that the route or routes determined by the mayor's commis-
sioners under that act coincide with the route or routes
covered by the charter of this company. That was not
alleged in the complaint, nor proved upon the trial, and we
cannot take judicial notice of the fact even if it exists. We
have no knowledge which can influence our action in this
case, that any proceedings whatever have been instituted in
the city of Brooklyn under the general rapid transit act.
And further that act does not necessarily amend or modify
the charter of this company, except to give the company
power to proceed under that act. It may not choose thus
to proceed; and then that act has no application to it. It
may choose to do so ; and then, in the cases mentioned, it
will have the power to construct and operate a road upon
fulfillment of the requirements and conditions imposed by
the commissioners. That act does not *ex proprio vigore*
nullify the limitations contained in section 17 of the act of
1871, or extend the existence of this corporation. If it
chooses to stand upon the act of 1871, as amended in 1873,
by which it was created, it must comply with that act. If
it chooses to avail itself of the general rapid transit act, it
must comply with the provisions of that act, and it must be
a valid subsisting corporation with the right and power to
build its road when it seeks to avail itself of that act. It
cannot wait until its charter, by its limitation, has expired
and then seek to get new life under that act. But it is suffi-
cient for the purpose of this action that the plaintiff was not
seeking to build its road under that act.

I am unable, therefore, to find any ground upon which
the plaintiff can base its right to maintain this action ; and
this conclusion is reached mainly by the application of the
principles laid down in the prior case cited. It may be that
some of the general language used in that case may have

to be limited in some future case arising under other circumstances and depending upon other facts. In the case supposed by the learned counsel for the appellant of a road for one hundred miles under the general railroad act, only ninety-nine of which have been completed within the ten years limited by that act as amended in 1867, it may well be that the road could continue to do business and operate the ninety-nine miles until the intervention of the courts in an action by the attorney-general in behalf of the people. But under the law as we have laid it down in this and the prior case, it could not take private property or a public street for the construction of the last mile. Its corporate right for that purpose would be absolutely gone, and that is as far as the facts of this case require us to go now.

The judgment must be affirmed, with costs.

All concur, except FOLGER and ANDREWS, JJ., absent.

Judgment affirmed.