IN THE MATTER OF THE KINGS COUNTY ELEVATED RAILWAY COMPANY, APPELLANT, TO ACQUIRE PROPERTY OF MARY DUANE AND JOHN O'BRIEN, RESPONDENTS.

*Construction and operation of elevated roads in cities — 1875, chap. 606 — all corporate rights and franchises are lost by a failure to construct the road within the time fixed — what delays are unavoidable within the meaning of the statute — 1881, chapter 518 is unconstitutional.*

In this proceeding, instituted by the Kings county Elevated Railway to acquire the right to construct and operate an elevated road over Fulton street in the city of Brooklyn, it appeared that, upon the application of the company, which was organized under chapter 606 of 1875, the mayor of the city of Brooklyn had appointed commissioners to determine upon the necessity of the proposed

railroad, and that the said commissioners had made their report and had therein prescribed and located the routes for the railway to be erected by this company, and required that that portion thereof to be constructed from Fulton Ferry along and through Fulton street to Nostrand avenue, with connection with the East river bridge, at or near its terminus, be completed within one year from August 1, 1878. They also provided therein that, "in case the several portions of such railway or railways shall not be completed, each within the time and upon the conditions hereinbefore, and as to such portion provided for, the rights and franchises acquired by such corporation shall be released and forfeited to the supervisors of the county of Kings."

An application to the court for the appointment of commissioners of appraisal, was resisted by the property owners upon the ground, among others, that the corporation had lost all its corporate rights and franchises by failing to construct its road within the time prescribed by the report of the commissioners.

*Held*, that the loss or forfeiture of the corporate rights and franchises of the corporation might be asserted by the property owners to defeat the application. *Matter of Brooklyn, W. and N. Railway Company* (72 N. Y., 245) followed.

That as the corporation had omitted to perform its duty and had defaulted in the execution of the condition imposed upon it by the statute and the articles of association, all its rights and franchises were, at the termination of the period of time limited, released, forfeited, surrendered and lost.

That at the end of the limited time all corporate powers ceased without any action being required on the part of the board of supervisors, or the entry of any judgment of a court.

The company claimed that the delay had been unavoidable, and that by a saving clause, in the resolution of the mayor's commission, time unavoidably consumed did not run against it. The saving clause provided that " the time, if any, unavoidably consumed by the pendency of legal proceedings or by the delay or interference of the public authorities in refusing to give their consent to the use of the streets and avenues, as required in section 4 of chapter 606 of the Laws of 1875, *or otherwise*, shall not be deemed a part of any period of time within which the construction and completion of the railway or railways is to be made."

*Held*, that the saving clause saved and reserved to the company only the time consumed by the delay or interference of the public authorities in any way, either by refusing consent to the use of the streets or otherwise, and also the time unavoidably consumed by the pendency of legal proceedings.

That the claim of the petitioner that the clause should be construed as though it read "time unavoidably consumed by the pendency of legal proceedings * * * or otherwise," could not be sustained.

That the word " otherwise " was introduced in a proviso and was intended to attach a condition to the operation of the resolution, and not to render it inoperative or nugatory, as would result from the construction contended for by the petitioner.

That the company had sustained a loss of its corporate powers which destroyed its right to institute proceedings for the condemnation of private property for public use.

Chapter 518 of 1881, providing that whenever the consent of the local authorities of any city having the control of any street or highway is required or necessary to the construction or operation of any railroad, in whole or in part, such consent in the city of Brooklyn may, in case the owners of one-half in value of the property bounded on the portions of the street upon or through which it is proposed to construct a railroad have consented to its construction and operation, be given by the mayor and commissioner of public works, is unconstitutional and void, as attempting to confer upon officers other than those prescribed by the Constitution, the power to give such consent.

APPEAL from an order made at the Kings County Special Term, denying a motion to appoint commissioners to ascertain and appraise the compensation to be made by the Kings County Elevated Railway Company, for the acquisition of the right to construct and operate its road through a portion of Fulton street, in the city of Brooklyn.

On April 26, 1886, application was made before Mr. Justice CULLEN for the appointment of commissioners to ascertain and appraise the compensation to be made to Mrs. Duane. It was resisted by Mrs. Duane on the following grounds:

*First* That the petitioner lacked the consent of the local authorities having charge of the streets of. Brooklyn.

*Second.* That the corporate powers and existence of the petitioner had ceased, because of its failure to construct and operate its road within the period limited by the mayor's commission which originally appointed it.

*Third.* That its original incorporation was defective.

In the opinion delivered by Mr. Justice CULLEN he says, with reference to the validity of chapter 518 of 1881, which purports to empower the mayor and commissioner of city works to give the consent of the local authorities to the construction and operation of the road :

" *Ninth.* I think the act of 1881 (chap. 518), authorizing the consent of the local authorities to be made by the mayor and commissioner of city works, is unconstitutional and void. The Constitution prescribes what local authorities must consent. They are the local authorities having control of the street or highway. The legislature may, I assume, determine what officers shall control the streets or highways for general purposes, and by changing such general control from one officer or set of officers to another, effect a change of officers whose consent is necessary. But only in this

manner can the legislature act upon the subject. The designation is made by the Constitution and the legislature cannot alter it. In *People ex rel. Smith* v. *Schiellein* (95 N. Y., 124) it was held that an act that justices of the peace should be elected at general elections was void, the Constitution having provided that the election should be held at town meeting. It was claimed that, as the legislature could fix any day for town meeting, it also could prescribe any day for the election of the justices. But the court held, even if the legislature could direct town meetings to be held on general election day, it could not authorize the election of justices at such a time unless it changed the time of town meeting to that day. In the act under discussion the legislature has not attempted to confer any new or greater power upon the officers named over the streets, except in respect to giving the constitutional assent. This, without the authority cited, is unconstitutional, unless these officers have the qualifications required by the Constitution. I think they have not. By the charter (sub. 4, § 13, title 11) the common council is given power to regulate all matters connected with the public streets and all business there.

"By section 1, title 18, the common council may open, close, extend, widen, regulate, grade and pave streets. In title 14, section 1, is found an enumeration of the powers of the commissioner of city works. It is provided that the commissioner shall have charge and control of the subjects specified, subject to the direction of the common council. By section 2 it is provided that the department thereby created shall have the powers of the old department superseded by it. Except that the exercise of such powers shall be under the direction and control of the common council. The whole effect of the charter of 1873 was to establish the supremacy of the common council over local affairs. The commissioner, save in certain cases of emergency, is only the ministerial officer to carry out its directions. The control of the commissioner is subject to the higher control of the common council. In fact, it is not a control at all; it is the mere exercise as agent of the control of another. Bearing in mind the common council could close the very street upon which the road is to be constructed, I think it cannot be doubted it is the local authority the Constitution contemplates.

" There is possibly this further criticism to be made on the act under discussion, that it is local legislation within the prohibition of the eighteenth section, article 3 of the Constitution. But if I am right in the views expressed, it is unnecessary to discuss this."

*Jesse Johnson,* for the railway company, appellant.

*George W. Wingate,* for the respondents.

DYKMAN, J. :

This proceeding was inaugurated by the petitioner for the invasion of the easement of Mary Duane and John O'Brien, in Fulton street, in the city of Brooklyn, and for the acquisition of the right to construct and operate an elevated railroad over that street, by the exercise of the right of eminent domain under the Constitution and laws of the State of New York.

The application to the court was for the appointment of commissioners of appraisal and the property owners in their resistance to the petition, among other things, interposed a denial of the vitality of the corporation, and claimed that it. had lost its life by the expiration of its corporate powers and the termination of its corporate rights. The solution of the question thus presented will depend upon the construction to be received by certain statutory provisions and the proceedings conducted in pursuance of the same. This corporation was organized under the rapid transit act of 1875, chapter 606, Laws of 1875. In its application to the city of Brooklyn, that law required the mayor of that city to appoint five commissioners, whose duty was to determine upon the necessity of the proposed railway, and if their decision was favorable, then to fix and determine and locate the route of the same. They were also to fix and determine the time within which such railway should be constructed and ready for operation, and prepare appropriate articles of association for the company, in which should be embodied the several conditions and requirements determined by them, and which should " provide for the release and forfeiture to the supervisors of the county of all rights and franchises acquired by such corporation in case such railway or railways shall not be completed within the time and upon the conditions therein provided." Such commissioners were appointed, and in the legal and appropriate discharge

of their duties they prescribed and located the routes for the railways to be erected by this company, and required the portion thereof to be constructed from Fulton Ferry along and through Fulton street to Nosrtand avenue, with connections with the East river bridge, at or near its terminus, to be completed within one year from the 1st day of August, 1878. They also made this article: " Article IX. In case the several portions of such railway or railways shall not be completed each within the time and upon the conditions hereinbefore, and as to such portion provided for, the rights and franchises acquired by such corporation shall be released and forfeited to the supervisors of the county of Kings." So that the final result and effect of all these preliminary measures was to provide, at the organization and creation of the corporation, that the road it contemplated and proposed on Fulton street, should be in operation to Nostrand avenue by the 1st day of August, 1879, under the penalty of forfeiture of its franchise, and it is conceded that the road is not even yet completed.

The prevalent rule of law is that the legal existence of a railroad corporation, armed with full power and authority to construct a railroad, lies at the foundation of the right to condemn property for its use under the right of eminent domain. (*Matter of Brooklyn, W. and N. R. Co.*, 72 N. Y., 245.) That requirement necessarily implies the continued existence of such corporation in the full possession of all its corporate powers and franchises without limitation or restriction, and if by non-performance of the conditions of its charter any of its corporate rights are forfeited or lost, the fact may be asserted to defeat an application for the acquisition of property by the exercise of the right of eminent domain. (72 N. Y., *supra*.)

In the last cited case the language of the statute was, if the road was not placed in operation in ten years " its corporate existence and powers shall cease," and the court held that by a failure to comply with that condition the corporation became extinct by the express limitation upon the original grant of corporate power, and that no judicial proceeding or action was necessary to declare a forfeiture of the charter and loss of corporate power.

In the subsequent case of the *Brooklyn Steam Transit Company* v. *The City of Brooklyn* (78 N. Y., 524), the language under construction was " all the powers, rights and franchises herein and

hereby granted, shall be deemed forfeited and terminated," and it was held in that case that the intention of the statute was to make the continued existence of the corporation depend upon a compliance with the conditions in its charter, and that in case of failure so to do all the powers and rights granted were to be deemed forfeited. That such non-compliance was not merely a cause of forfeiture to be enforced by judicial proceeding, but was itself to be taken as a forfeiture. Here the language employed is " the rights and franchises acquired by it shall be released and forfeited to the supervisors of the county of Kings," and it differs from the phraseology of the condition in the statutes under consideration in the two cases last mentioned, yet it imports a limitation and indicates the legislative intention that a non-compliance with the condition shall absolutely terminate the corporate powers of the company. Even if its corporate existence be not at an end, its powers are so restricted as to create a disability to exercise its functions. All its powers were forfeited to the supervisors. It had alienated its rights and franchises by a failure to perform the condition upon which the continuance of its existence depended. They had passed from it, and with them departed all its powers of aggressive action. So that if the language employed imports a forfeiture to the supervisors it is equally fatal, for it is a forfeiture still, and entails the same consequences upon the company. It is unnecessary to determine the rights or the extent of the power bestowed on the supervisors, or whether the franchise was released and reverted to them, and they owned the same, for even then the company is resting under disability and cannot wage an aggressive war upon private property or private rights.

Let it be borne in mind steadily that these statutes all execute themselves, as it was distinctly held in the two cases referred to above. When the period of limitation is reached, and the condition remains unperformed, the forfeiture is wrought *eo instanti* by operation of the law. Unless the language here was intended to operate as a limitation of power, it has no scope or effect, and if it was so intended, and is to be allowed such operation, then it falls easily within the doctrine of the two cases cited, and circumscribes the corporate powers of this company. The corporation has omitted its duty and defaulted in the execution of the condition imposed upon it by the statute and the articles of association, and the legis-

lative intention to make the continuation of its existence depend upon the performance of such condition is plainly manifested. At the termination of the period of time limited, its rights and franchises were released and forfeited, surrendered and lost to the supervisors, if you will have it so, but still departed and gone from the company with no trace of power remaining.

To escape the consequences of such conclusion the company advances two arguments: First. That the delay has been unavoidable, and that by a saving clause in the resolution of the mayor's commission the time unavoidably consumed does not run against it; and, second, that its failure to perform the condition of itself does not terminate its rights, but merely creates a cause of forfeiture which the supervisors alone can enforce, and that until they move the company remains in full possession of all its powers.

This second argument is founded on the well-recognized principle that corporations do not lose their existence ordinarily by a failure to perform any of the duties imposed by their charters, but simply incur the liability of deprivation of their franchises by the judgment of a court in proceedings instituted for that purpose; but we have seen that the legislature here intended an absolute limitation, and not merely a cause of forfeiture, at the end of the limited time all corporate powers are ended, as if that were the time limited in its charter for its corporate existence. (78 N. Y., 530; 72 id., 245.) The same contention was made in both of those cases and was not allowed prevalence, and it can be permitted no force in this case.

The saving clause in the resolution of the commissioners relied upon in the first argument is as follows: " The time, if any, unavoidably consumed by the pendency of legal proceedings, or by the delay or interference of the public authorities in refusing to give their consent to the use of the streets and avenues as required in section 4 of chapter 606 of the Laws of 1875, or otherwise, shall not be deemed a part of any period of time within which the construction and completion of the railway or railways is to be made. But the time, if any, during which such unavoidable delay shall continue shall be added to each of the periods hereby otherwise limited for the construction and completion of the railway or railways."

That saving clause saves and reserves to the company the time

consumed by the delay or interference of the public authorities in any way, either by refusing consent to the use of the streets or otherwise, and also the time unavoidably consumed by the pendency of legal proceedings.

The appeal book contains a stipulation that prior to January, 1886, no legal proceeding had been instituted against the company in which any order had been procured restraining it from building or operating its road, unless such effect was to be allowed to the proceedings taken by the company to obtain consent from the court instead of the property owners; and that only extended down to September, 1880, and there was no restraint after October, 1879, and no delay was experienced from hostile legal proceedings after that time, and it was not the intention of the legislature to permit the company to extend its time by delays in legal proceedings instituted by itself beyond a reasonable time. The common council gave the requisite consent to the company in June, 1879, and after that date no time was consumed by the delay or interference of that body.

But the counsel for the petition claims a more enlarged signification and operation for the word otherwise, and would have the clause in which it occurs construed as though it read " time unavoidably consumed by the pendency of legal proceedings * * * or otherwise." This word otherwise was introduced in a proviso, and was intended to attach a condition to the operation of the resolution, and not to render it inoperative or nugatory; but the construction contended for would introduce so many elements of uncertainty that it would excuse all delays from unavoidable failures, and would extend the time for the construction of the road to an indefinite period. It would neutralize the effect of the statute, which requires the commissioners to fix and determine the time within which the road shall be constructed and ready for operation.

Our conclusion is that the petitioner has sustained a loss of its corporate powers, and is resting under a disability and incapacity which destroys its right to institute proceedings for the condemnation of private property for public use.

This result leads to the affirmance of the order appealed from without an examination of the numerous other questions involved in the appeal, but it is proper, and perhaps better, to say that we

have examined the act of 1881, chapter 518, which authorizes the consent of the local authorities required by the Constitution to be made and given by the mayor and commissioner of city works, and that we concur in the opinion delivered by the Special Term, that the law contravenes the Constitution, and is void and ineffectual for that reason.

The order should be affirmed, with costs and disbursements.

BARNARD, P. J., concurred.

Order affirmed, with costs and disbursements.