In the Matter of the Proceedings of the LONG ISLAND
RAILROAD COMPANY, Respondent, to Acquire Title to the
Real Estate of CHARLES MORAN, Appellant.

The charter of a railroad corporation may not be annulled, or held for-
feited in part, because of a violation by it of a private contract.

So, also, the fact that such a corporation, propelling its cars by steam,
has, by virtue of a private contract, surrendered the right to use steam
on a small portion of its route, and that it has violated this contract, is
no defense in proceedings instituted by it to condemn lands required
and shown to be necessary for its corporate purposes.

The company's corporate rights of eminent domain are unaffected by the
breach of contract, and may still be exercised in a proper case.

Where, therefore, in such proceedings it appeared that the petitioner,
prior to 1859, was lawfully running its trains along an avenue in the city
of Brooklyn; that, pursuant to the provision of the act of that year
(Chap. 484, Laws of 1859) providing for the relinquishment of its right
to use steam power within the city, it entered into a contract with the
city, by which it surrendered such right in consideration of a sum paid
to it, which was raised by assessment upon property benefited, and
thereafter the common council of the city adopted a resolution authoriz-
ing the use of steam in running cars on said avenue, and the legisla-
ture passed an act (Chap. 187, Laws of 1876) authorizing the petitioner
to run cars over its road on the avenue by steam power, whereupon the
petitioner resumed the use of steam power on the avenue, *held*, that
the question of the constitutionality of the act last mentioned was not
presented; that if unconstitutional and the use of steam power on the
avenue illegal, this was no defense to the proceedings.

(Argued June 5, 1894; decided June 12, 1894.)

APPEAL from order of the General Term of the Supreme
Court in the second judicial department, made September 12,
1892, which affirmed an order of Special Term appointing
commissioners of appraisal in condemnation proceedings.
The proceedings in question were instituted under the Gen-
eral Railroad Act of 1850 (Laws of 1850, chap. 140) by the
petitioner, a steam railroad corporation, to acquire title to land
in the city of Brooklyn for a freight depot. The petition
alleged that the petitioner had been and is engaged in operat-
ing as lessee the Atlantic Avenue railroad, along Atlantic
avenue, in said city, by steam power.

It appeared that in 1859 the Brooklyn and Jamaica. Railroad Company and the Long Island Railroad Company, the petitioner, were running their trains up and along Atlantic avenue with the full authority and consent of the state and the city. In that year the legislature passed an act (Laws of 1859, chap. 484) to provide for the closing of the tunnel of the Long Island Railroad Company, in Atlantic street, and for the relinquishment by said company of its right to use steam power within the city of Brooklyn. The act authorized the common council, upon the petition of a majority of landowners within the district of proposed assessment, to apply to the Supreme Court for the appointment of three commissioners who should be empowered to contract with said companies to relinquish the use of steam within the city limits in consideration of a payment not exceeding $125,000, which sum was to be raised by assessment upon property benefited within a certain specified area. The act provided that upon the confirmation of the report of the commissioners the right of the two companies to use steam power within the city limits should end, and repealed, as of that date, all laws conferring such right. The contract was made accordingly, the assessment levied, and the money collected and paid, and the right to use steam surrendered. The road was thereafter operated by horse power until 1876, a period of about sixteen years. In that year the common council adopted a resolution permitting and authorizing the use and operation of steam and steam locomotives and cars on Atlantic avenue, between Flatbush avenue and the city line, by the Atlantic Avenue Railroad Company or any railroad company acquiring by lease or otherwise the right so to use and operate the railroad on such avenue. In the succeeding month the legislature enacted that it should be lawful for the Atlantic Avenue Company and the Long Island Company, as its lessee, to run cars over the road on the avenue, from the city line to Flatbush avenue, by steam power, subject to such rules and regulations as the city of Brooklyn might prescribe. (Laws 1876, chap. 187.) Immediately after

the passage of this act the Atlantic Avenue road resumed the use of steam power, and in 1877 the Long Island Company, having leased said road, re-laid the track with heavier rail and better suited for the use of locomotives, and thereafter moved its trains by steam.

The appellant, whose real estate is sought to be acquired, claims that the act of 1876 authorizing the use of steam on said avenue, is unconstitutional, and that the proceedings were instituted without legislative warrant.

*John M. Bowers* for appellant.    The Long Island Railroad Company was a party to the legislation and to the contract in question, and is bound thereby.  (Laws of 1859, chap. 444; *D. College* v. *Woodward*, 4 Wheat. 518; *B. S. T. Co.* v. *City of Brooklyn*, 78 N. Y. 531; *W. F. Co.* v. *O. & M. R. Co.*, 142 U. S. 396; *Litchfield* v. *Vernon*, 41 N. Y. 123.)    The legislation and contracts forbidding the further use of steam power upon Atlantic avenue, in the city of Brooklyn, were lawful.  (*Brown* v. *Mayor, etc.*, 63 N. Y. 239; *W. Co.* v. *Bank of British Columbia*, 119 U. S. 191; *R. R. Co.* v. *Richmond*, 96 id. 521.)    As against a property owner who paid his assessment under the terms of such legislation and contracts, the act of the legislature of 1876, restoring the right to use steam power upon that avenue, was unconstitutional and void, as impairing the obligation of a contract.  (*University* v. *People*, 99 U. S. 309; *Merewether* v. *Garrett*, 102 id. 514; *Lahr* v. *M. E. R. Co.*, 104 N. Y. 282; *Newton* v. *Comrs.*, 100 U. S. 528.)    If such act be unconstitutional and void, then as against the appellant, the Long Island Railroad Company has no lawful right to operate its railroad by steam on Atlantic avenue in the city of Brooklyn.  (*In re Cheeseboro*, 78 N. Y. 232; Laws of 1859, chap. 384, § 3.)    Having no lawful right to operate its road by steam on Atlantic avenue, it cannot avail itself of the statute authorizing railways lawfully operated to condemn private property.  (*Miller* v. *Brown*, 56 N. Y. 383; *B. S. T. Co.* v. *City of Brooklyn*, 78 id. 531; *Vick* v. *City of Rochester*, 46 Hun, 607.)    The

lands sought to be condemned are not contiguous to other property of the petitioner. (Laws of 1869, chap. 237 ; Laws of 1877, chap. 224 ; Laws of 1881, chap. 649 ; *R. R. Co.* v. *Gunnison*, 1 Hun, 496 ; *Bird* v. *W. & M. R. Co.*, 8 Rich. Eq. [S. C.] 46 ; *Akers* v. *U. N. J. R. Co.*, 43 N. J. L. 110 ; *P. R. Co.'s Appeal*, 93 Penn. St. 150.) The order appealed from is a final order in a special proceeding, and is appealable to this court. (Code Civ. Pro. § 190, sub. 3 ; *R. & S. R. R. Co.* v. *Davis*, 43 N. Y. 47 ; 55 id. 148 ; *In re L. I. R. R. Co.*, 45 id. 368.)

*E. B. Hinsdale* for respondent. The objections to the form of the petition were not well taken. (*P. P. & C. I. R. R. Co.*, 67 N. Y. 371, 377 ; *W. S. R. R.*, 64 How. Pr. 216 ; *S. R. T. Co.*, 38 Hun, 553 ; *M. E. R. R. Co.*, 12 N. Y. Supp. 502, 506.) The objection that the premises in question were not contiguous to the petitioner's railroad was not well taken. (Laws of 1881, chap. 649 ; *N. Y. C. R. R. Co.* v. *Gunnison*, 1 Hun, 496.) There is no force in the objection that the petitioner has not the right to operate its railroad in Brooklyn by steam power. (*People* v. *L. I. R. R.*, 9 Abb. [N. C.] 181 ; 30 Hun, 510 ; 89 N. Y. 75 ; *People* v. *B., F. & C. I. Co.*, 89 N. Y. 75 ; *Newton* v. *Commissioners of Mahoning*, 100 U. S. 548 ; *B., etc., R. R. Co.* v. *B. S. R. R. Co.*, 11 N. Y. 132 ; *S. R. T. Co.* v. *Mayor*, 128 id. 510 ; *P. Church* v. *New York*, 5 Cow. 538 ; *Britton* v. *Mayor*, 21 How. Pr. 251 ; *In re Lee*, 21 N. Y. 9 ; Cooley on Const. Lim. § 340 ; *In re B. E. R. Co.*, 125 N. Y. 434, 440.) This is a proceeding *in rem*, and if there is any force in the contract not to use steam on the avenue it is a personal contract of the appellant and does not attach to the lands as land. (*People* v. *B., F. & C. I. R. Co.*, 89 N. Y. 75.)

Finch, J. I do not think that the question argued at the bar, and which was reserved and left undecided in *People* v. *Brooklyn, F. & C. I. R. Co.* (89 N. Y. 83), is even yet presented in a form to justify our final determination. That

question is whether the landowners on Atlantic avenue who paid assessments under an alleged contract for the discontinuance of steam propulsion upon that avenue, acquired a right which the legislature could not take away, and which makes the use of steam power upon that portion of petitioner's line unlawful. If we were to admit the alleged fact and should hold that the Long Island Co. had lost its right to use steam on the avenue end of its line, both under its own charter and as lessee, it would furnish no adequate answer to the present application. The petitioner would yet remain a steam railroad company, having possession of its charter and the rights secured thereby, using steam upon many miles of track, and doing so legally and by competent authority, and so at liberty to condemn land for its corporate purposes. Whether it may or may not use steam upon a small fraction of its line is a question irrelevant to its power of condemnation. That power remains until the charter is forfeited or annulled. If the company has become bound to use horses, or compressed air, or electricity upon a part of its line it may still need accommodation for freight, and the handling of cars and further terminal facilities, and there is no proof before us that the necessity existing rests or depends upon the ability to use steam upon the avenue end of the line. The evidence is that the company runs four hundred trains a day, and that its terminal facilities are so insufficient as to compel an occupation of Flatbush avenue by its cars, and nothing indicates that the pressure for room would be materially lessened if some motive power other than steam should be substituted in the city streets. At all events, until it is proved that the added accommodation sought is only necessary while steam is exclusively used, the fact that it cannot be lawfully used upon a few miles of track is no answer to a justified demand for the condemnation of further land. Corporate charters are not forfeited in fragments, or annulled as damages for the violation of private contracts. The argument of the learned counsel for the appellant is strongly framed until it reaches this fatal point. As to that the authorities which he cites are either irrelevant to

his purpose or adverse to the current of his reasoning. *Brooklyn Steam Transit Co.* v. *Brooklyn* (78 N. Y. 531) shows that the corporate life and power, once fully granted and completely existing, may be lost in two ways: sometimes because the charter itself provides for self-executing causes of forfeiture which, whenever established, effect at once the corporate death; and sometimes where no such provisions' exist, the forfeiture comes and can only come from a judicial decree at the suit of the state. This last remedy against the company has been tried and failed. The use of steam upon the avenue has been held to be lawful as against the intervention of the state; and so it follows that even if it be unlawful against contract rights of individuals the fact works no forfeiture, the corporation remains intact with no power crippled, since the wrong it has done, if it be a wrong, is neither a cause of self-executing forfeiture, nor a ground of destruction at the suit of the state. The company's corporate right of eminent domain, therefore, remains unaffected and may still be exercised when the proper occasion comes. In the *Whirlpool Railway Case* (108 N. Y. 375) it was held that a company seeking to exercise the power of condemnation must show, first, a legislative warrant for its act, and, second, that it is engaged in a railroad enterprise of a public character. In the present case both facts exist beyond dispute, and the power of condemnation is not destroyed by the incident that individuals through the force of a special contract with the company may compel the use of some motive power other than steam upon a small portion of the line. Other cases cited on behalf of the appellant were those in which some express condition of the corporate life remained unfulfilled, or in which the rights of the company came in collision with and were subordinated to the police power of the state. The cases are very far from holding that a corporation loses its conferred right of eminent domain by merely breaking a private contract with a private individual.

The General Term opinion accedes to this view of the case but speaks of it as quite technical. For us and in this court

it is much more than that, for it renders unnecessary and so improper a discussion of the constitutional question upon which the private right of the appellant turns. To decide that when after all the result must remain unchanged would be to violate a prudent and useful rule which governs our judicial action.

The appellant and those situated like him have apparently suffered an injustice. They paid their money to get rid of steam on the avenue and it has come back under legislative sanction. If there is a remedy, however, and a right has been violated, the redress must come through an enforcement of the contract and not by an attack upon the corporate life and power.

The order should be affirmed, with costs.

All concur.

Order affirmed.