[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 69 
I do not think that the question argued at the bar, and which was reserved and left undecided in People v. Brooklyn, F. C.I.R. Co. (89 N.Y. 83), is even yet presented in a form to justify our final determination. That *Page 71 
question is whether the landowners on Atlantic avenue who paid assessments under an alleged contract for the discontinuance of steam propulsion upon that avenue, acquired a right which the legislature could not take away, and which makes the use of steam power upon that portion of petitioner's line unlawful. If we were to admit the alleged fact and should hold that the Long Island Co. had lost its right to use steam on the avenue end of its line, both under its own charter and as lessee, it would furnish no adequate answer to the present application. The petitioner would yet remain a steam railroad company, having possession of its charter and the rights secured thereby, using steam upon many miles of track, and doing so legally and by competent authority, and so at liberty to condemn land for its corporate purposes. Whether it may or may not use steam upon a small fraction of its line is a question irrelevant to its power of condemnation. That power remains until the charter is forfeited or annulled. If the company has become bound to use horses, or compressed air, or electricity upon a part of its line it may still need accommodation for freight, and the handling of cars and further terminal facilities, and there is no proof before us that the necessity existing rests or depends upon the ability to use steam upon the avenue end of the line. The evidence is that the company runs four hundred trains a day, and that its terminal facilities are so insufficient as to compel an occupation of Flatbush avenue by its cars, and nothing indicates that the pressure for room would be materially lessened if some motive power other than steam should be substituted in the city streets. At all events, until it is proved that the added accommodation sought is only necessary while steam is exclusively used, the fact that it cannot be lawfully used upon a few miles of track is no answer to a justified demand for the condemnation of further land. Corporate charters are not forfeited in fragments, or annulled as damages for the violation of private contracts. The argument of the learned counsel for the appellant is strongly framed until it reaches this fatal point. As to that the authorities which he cites are either irrelevant to *Page 72 
his purpose or adverse to the current of his reasoning. BrooklynSteam Transit Co. v. Brooklyn (78 N.Y. 531) shows that the corporate life and power, once fully granted and completely existing, may be lost in two ways: sometimes because the charter itself provides for self-executing causes of forfeiture which, whenever established, effect at once the corporate death; and sometimes where no such provisions exist, the forfeiture comes and can only come from a judicial decree at the suit of the state. This last remedy against the company has been tried and failed. The use of steam upon the avenue has been held to be lawful as against the intervention of the state; and so it follows that even if it be unlawful against contract rights of individuals the fact works no forfeiture, the corporation remains intact with no power crippled, since the wrong it has done, if it be a wrong, is neither a cause of self-executing forfeiture, nor a ground of destruction at the suit of the state. The company's corporate right of eminent domain, therefore, remains unaffected and may still be exercised when the proper occasion comes. In theWhirlpool Railway Case (108 N.Y. 375) it was held that a company seeking to exercise the power of condemnation must show, first, a legislative warrant for its act, and, second, that it is engaged in a railroad enterprise of a public character. In the present case both facts exist beyond dispute, and the power of condemnation is not destroyed by the incident that individuals through the force of a special contract with the company may compel the use of some motive power other than steam upon a small portion of the line. Other cases cited on behalf of the appellant were those in which some express condition of the corporate life remained unfulfilled, or in which the rights of the company came in collision with and were subordinated to the police power of the state. The cases are very far from holding that a corporation loses its conferred right of eminent domain by merely breaking a private contract with a private individual.
The General Term opinion accedes to this view of the case but speaks of it as quite technical. For us and in this court *Page 73 
it is much more than that, for it renders unnecessary and so improper a discussion of the constitutional question upon which the private right of the appellant turns. To decide that when after all the result must remain unchanged would be to violate a prudent and useful rule which governs our judicial action.
The appellant and those situated like him have apparently suffered an injustice. They paid their money to get rid of steam on the avenue and it has come back under legislative sanction. If there is a remedy, however, and a right has been violated, the redress must come through an enforcement of the contract and not by an attack upon the corporate life and power.
The order should be affirmed, with costs.
All concur.
Order affirmed.