THE BUFFALO AND NEW-YORK CITY RAILROAD COMPANY *against* BRAINARD and others.

THE SAME *against* SMITH and others.

Where a railroad corporation, required by its charter to provide means of transportation and to transport over its line, at reasonable times and at prices limited by law, all such passengers and property as shall be offered for transportation, appropriates private property in pursuance of its charter for its roadway, such property is taken "for public use" within the meaning of the constitutions of this state and of the United States.

The legislature may grant to such corporations the power to appropriate private property necessary for their use, on making compensation as required by those constitutions.

Such power may be granted by a general act providing for the creation of an indefinite number of corporations.

Objections to the proceedings to ascertain the compensation to which the owners are entitled for lands so appropriated, if not taken before the commissioners or in the court below, are not available in this court, except such as could not have been obviated, had they been duly taken.

EACH of these cases presented the same questions for decision. The Attica and Hornellsville Railroad Company was incorporated by the legislature, May 14th, 1845, for the purpose of constructing a railroad from Attica in the county of Wyoming to Hornellsville in the county of Steuben, passing through parts of the counties of Genesee,

Livingston and Allegany. By the 49th section of the "act to authorize the formation of railroad corporations, and to regulate the same," passed April 2, 1850, that company, among others, was clothed with nearly all the powers and privileges, and subjected to the duties and liabilities prescribed by that act. Among the powers thus given was the right, in case any company should be unable to agree for the purchase of any real estate required for the purposes of its incorporation, to acquire title to the same by the special proceedings prescribed in that act. Those provisions required the presentation of a petition to the supreme court describing the lands sought, giving the names and residence of the owners and praying for the appointment of commissioners of appraisal, a copy of which petition, with notice of the time and place at which it would be presented, was to be served on the owners at least ten days prior to the time of its presentation. On the presentation of the petition, if no sufficient cause was shown against it, the court was required to appoint five commissioners to ascertain and appraise the compensation to be made to the owners of the real estate proposed to be taken for the purposes of the company, and to fix the time and place for the first meeting of the commissioners. The owners of the lands, in case of their appearance, were authorized to name six persons, and the company a like number, and the court was in that case required to appoint two commissioners from each six, if there should be no legal objection to their appointment, and to appoint the other commissioner in its discretion. Directions were given in the act for the proceedings of the commissioners, and the making and confirmation of their report, and it was declared, that on payment of the sums awarded, with the costs and expenses of the proceedings as directed by the order of the court, the company should be entitled to enter upon and use the land for the purposes of its incorporation during the continuance of its corporate existence, and that all persons

parties to the proceedings should be barred of all estate and interest in the lands during that time.

In pursuance of the provisions of this act, and not under its original charter, the Attica and Hornellsville Railroad Company in April, 1851, presented to the supreme court its petition in each of the above cases, asking the appointment of commissioners to ascertain and appraise the compensation to be made to the respective defendants, as owners of or interested in certain lands in Wyoming county, described in the petitions, proposed to be taken for the purposes of the company. The owners of the lands appeared and opposed the petitions, but the prayers thereof were granted, and the same persons appointed commissioners in both cases and in one other similar case. It was also ordered that in all future proceedings in those matters the petitioners should be known and designated as " The Buffalo and New-York City Railroad Company," such change of name having been made by the corporation in pursuance of a statute passed March 31st, 1851.

The 16th section of the general act before referred to, contains the following provision: " They [the commissioners] shall view the premises described in the petition, and hear the proofs and allegations of the parties, and reduce the testimony, if any is taken by them, to writing; and after the testimony is closed in each case, and without any unnecessary delay, *and before proceeding to the examination of any other claim*, a majority of them, all being present and acting, shall ascertain and determine the compensation which ought justly to be made to the party or parties owning or interested in the real estate appraised by them; and in determining the amount of such compensation they shall not make an allowance or deduction on account of any real or supposed benefits which the parties in interest may derive from the construction of the proposed railroad."

From the report of the commissioners embracing the three cases, it appeared that they met according to the order of the court, and that the petitioners and the alleged owners of the lands appeared before them; that they then proceeded to examine the premises in each of the cases, but not having sufficient time to close the proceedings on that day, adjourned to the next day, when the same parties appeared, and the commissioners having examined the premises and heard the allegations of the parties (no witnesses being offered in either case), and having considered and examined each case separately, they certified to the court the compensation proper to be made to the owners and parties in such case for the lands taken, &c., setting forth the amount awarded to each. Nothing appeared in the report in relation to any allowance or non-allowance for benefits. In the recitals of the report it was stated that the commissioners proceeded under the act to authorize the formation of railroad corporations, passed March 27th, 1848, which act was repealed by the act of 1850, before mentioned. The report was confirmed at special term by a separate order in each case, the land owners appearing and opposing the confirmation. The cases do not show that any exceptions or specific objections were at any time taken to the proceedings of the commissioners or of the court. The above named defendants severally appealed from the appraisals and report and from the orders of confirmation, to the general term, where the proceedings were confirmed, and they then appealed to this court.

*Benedict* for the appellant.

I. The act of the legislature under which these proceedings were had, is unconstitutional. 1. Because it attempts to surrender the power to determine when and what private property may be taken for a use declared to be public, to the private individuals in whom it seeks to vest the property. 2. Because it provides that the parties whose rights are to

be adjudicated, may choose the commissioners of appraisal; the constitution declaring that such commissioners shall be chosen by a court of record. (*Cons. of New-York, art.* 1, § 7.

II. The commissioners of appraisal proceeded under a statute which had been repealed before their appointment, and which did not govern this case.

III. The report of the commissioners does not show that they proceeded in their appraisal as directed by the act of the legislature under which they were appointed to act. The commissioners erred in the following particulars, as is shown by their report: 1. They did not determine the compensation to be made in each case before proceeding to the examination of other claims, as the act requires. (*See Railroad act,* § 16, *Sess. Laws* 1850, 218.) 2. They did not report, and the proceedings nowhere show, that they made no allowance or deduction from the amount of the compensation, on account of any benefit, real or supposed, which the appellant might derive from the construction of the proposed railroad. The act requires that no such deduction shall be made. (*See* § 16.) Nothing is presumed to have been regularly done in such cases, unless it appears by the record to have been so done.

IV. The proceedings in this case were under a statute authority, by which the estate of the appellant is taken from him without his consent, and all the requirements of the statute not appearing on the record to have been strictly complied with, those proceedings should be set aside. (*Gilbert* v. *The Columbia Turnpike Co., 3 John. Ca.,* 107; *Thatcher* v. *Powell,* 6 *Wheat. U. S. R.,* 116; *Sherwood* v. *Read,* 7 *Hill,* 430; *Williams* v. *Peyton,* 4 *Wheat.,* 77; *Blossom* v. *Burdick,* 1 *Hill,* 130; *Underwood* v. *Irving,* 3 *Cow.,* 59; *Rea* v. *McEachron,* 13 *Wend.,* 465; *Jackson* v. *Sheppard,* 7 *Cow.,* 8; *Atkins* v. *Kinnan,* 20 *Wend.,* 241; *Sharp* v. *Spear,* 4 *Hill,* 72; *Sharp* v. *Johnson,* 4 *Hill,* 76.)

*N. Hill, Jr.,* for the respondent.

Buffalo and New-York Railroad *against* Brainard.

I. The supreme court acquired jurisdiction by the petition and service of notice upon the appellant, and he appeared throughout the proceedings. (*Laws of* 1850, 216 *to* 219.)

II. The court and the commissioners having acquired jurisdiction, the proceedings are to be presumed regular in every respect, until the contrary is clearly shown. (*Stafford* v. *Williams*, 4 *Denio*, 182; *Doughty* v. *Hope*, 3 *Denio*, 249; *same case*, 3 *id.*, 594, 598; 1 *Comst.*, 79, 5, 6; *Oakley* v. *Van Horne*, 21 *Wend.*, 305; *Jencks* v. *Smith*, 1 *Comst.*, 90.)

III. The presumption therefore is, that the commissioners determined each case before taking up any other, if that was necessary; nothing to the contrary appearing in the report. (*Laws of* 1850, 218, § 16; *and see the cases last above cited.*)

IV. The appellant, moreover, if he meant to make any objection for non-compliance with this or any other part of the act, should have objected before the commissioners, in which case the facts would have appeared affirmatively in their report, as a part of their "proceedings." (*Laws of* 1850, 218, 219, §§ 16, 17; *Walker* v. *Boston & M. R. R.*, 3 *Cush.*, 1; *Fitchb. R. R.* v. *Boston & M. R. R.*, 3 *id.*, 58; *Davidson* v. *Boston & M. R. R.*, 3 *id.*, 91; *Oakley* v. *Van Horne*, 21 *Wend.*, 305; *Jencks* v. *Smith*, 1 *Comst.*, 90.)

V. But this part of the act does not apply where the commissioners act on view, and no testimony is offered by either party, as in the present case. (*Laws of* 1850, 218, 219, § 16.)

VI. Besides, the clause relates merely to the mode of proceeding, and is therefore directory merely. (*Doughty* v. *Hope*, 3 *Denio*, 249; *King* v. *Inhabitants, &c.*, 8 *Barn. & Cress.*, 29; *Cole* v. *Green*, 8 *Mann. & Grang.*, 888, 889.)

VII. The proceedings being in conformity to the act of April 2d, 1850, are not vitiated by the erroneous reference in the commissioners' report to the repealed act of 1848; especially as the petition was expressly under the act of 1850.

VIII. There is no force in the objection that the general railroad act, under which these proceedings were had, is unconstitutional. 1. It provides for ascertaining the damages by commissioners to be appointed by a court of record. (*Laws of* 1850, 216, § 14, *et seq.*) 2. The exercise of the right of eminent domain may be delegated by the legislature to public officers, corporate bodies, or private persons. (*Const., art.* 8, §§ 1, 3; *Bloodgood* v. *M. & H. R. R. Co.,* 18 *Wend.,* 9.)

MASON, J., delivered the opinion of the court.

The first and most important question in this case is, whether the legislature possessed the constitutional powers to authorize railroad corporations to take the property of private individuals for the purposes of their roads in the manner provided in the act of April 2, 1850, entitled "An act to authorize the formation of railroad corporations, and to regulate the same." This act authorizes any number of persons not less than twenty-five to form a company for the purpose of constructing a railroad, by subscribing at least one thousand dollars for every mile of road proposed to be made, paying ten per cent thereon to the directors, and by signing articles of association and filing the same in the office of the secretary of state, &c., to become incorporated, and when incorporated they have the right to locate their road, and to acquire title to the lands over which they shall have determined to construct the same. (*Laws of* 1850, 215, 216, §§ 13, 14.) The statute makes the act of incorporating the company as above stated, and locating their road, effective to invest the corporation with the right to take the lands necessary to construct such road. (*See* § 13 *of the act.*) The damages to the owners are to be assessed in the manner provided in §§ 14, 15, 16, 17 and 18; and the 18th section provides that upon the payment to the owner of the damages assessed, the company shall be invested with the title to the lands. The same

section declares that all real estate acquired by any com-pany under and pursuant to the provisions of the statute, for the purposes of the corporation, shall be deemed acquired for public use. The 1st section, which provides for the formation of these companies, states that they may be formed "*for the purpose of constructing, maintaining and operating a railroad for public use in the conveyance of persons and property.*" The 13th section allows them to acquire title to the property which may be required for the purposes of their incorporation, and the 18th section only allows them to use the lands for the same purposes during the continuance of their corporate existence. The seventh sub-division of § 28 provides that these corporations may take and carry persons and property on their road, and receive a compensation therefor; and the ninth subdivision of the same section allows them to regulate the compensation which they shall receive, not to exceed, however, three cents per mile for every passenger and his ordinary luggage.

The 29th section imposes tolls upon those roads which run parallel to and within thirty miles of any of the state canals, which tolls are to go into the canal fund. The act provides for annual reports to the legislature of all their expenses in maintaining their roads, and of all their business and doings. The 33d section reserves to the legislature the right from time to time to reduce the rate of freight, fare or other profits of these corporations, whenever they exceed ten per cent upon the capital actually expended.

By the 36th section it is provided " that every such cor-poration shall start and run their cars for the transportation of passengers and property at regular times to be fixed by public notice; and shall furnish sufficient accommodation for the transportation of all such passengers and property as shall within a reasonable time previous thereto be offered for transportation," &c., " and shall take and transport such passengers and property, &c., on the payment of the freight or fare legally authorized therefor," and declares that they

" shall be liable to the party aggrieved in an action for damages for any neglect or refusal in the premises."

It is very evident from the whole scope of the act under consideration that the legislature designed to make these corporations common carriers of persons and property, and to require them to be constantly engaged in such public employment (*Story on Bailments*, §§ 495, 496); and it was decided as long ago as 1837, in the case of *Bloodgood* v. *The Mohawk and Hudson River Railroad Company* (18 *Wend.*, 9), in the court of last resort in this state, that lands taken for the construction of such a road were taken for public use.

These roads have proved of such public utility since that period that the legislature in 1850, in the act in question, has licensed their construction in any part of the state where the people might desire to construct them, and has deemed them of such public importance as to declare in so many words that " all real estate acquired by any company under and pursuant to the provisions of this act for the purposes of its incorporation shall be deemed to be acquired for public use." (§ 18.)   These considerations have an important bearing on the decision of the question under review, as the constitutions, both of the United States and of this state, declare that " no person shall be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation." (*Amendments to U. S. Const.*, art. 5; *Const. of New-York*, art. 1, § 6.)  From the last clause a prohibition of power to take the property of a citizen for private use is clearly implied.   The right, however, of taking private property for public use is an admitted incident to the sovereignty of every government, and has been repeatedly recognized under both our federal and state constitutions. (11 *Wend.*, 149; 18 *Wend.*, 9; 18 *Pick.*, 480; 23 *id.*, 360, 395, 396.)

The common law right of eminent domain has ever been regarded as a high prerogative of sovereignty, to be exer-

cised whenever the public necessity required; and this right is impliedly admitted, both in the constitution of the state and of the United States, in the clause above quoted. It belongs to the legislative power of the government to determine for what public purposes private property shall be taken, and the necessity or expediency of such appropriation. (7 *Greenl.*, 273 ; 3 *Watts*, 294 ; 1 *Dana*, 232, 247 ; 7 *Mass.*, 395 ; 3 *Yerg.*, 41 ; 3 *Paige*, 73 ; 2 *Kent's Com.*, 340 ; 18 *Wend.*, 13.) This power the legislature has taken upon itself to exercise in the case under consideration. It has by express enactment made these corporations in their objects and purposes things of a public character and concern, and has declared that lands taken for the construction of their roads shall be deemed taken for public use, and our courts have so held. (18 *Wend.*, 9.)

But the particular ground of objection relied upon to show that the act in question is unconstitutional, if I correctly understand it, is that the act itself does not appropriate the specific land taken for public use, but delegates to the corporation the power in each particular case to make the location and selection. It has been long settled in this state that the legislature may confer this power upon different officers, confining its exercise however to the appropriation of property required for public use. The general authority conferred by the legislature upon commissioners of highways, upon the canal commissioners, upon the trustees of villages, and many other cases, are familiar instances of the delegation of this power, all of which have been sustained by our courts.

It is very difficult, if not impossible, to prescribe any general rule that would define with precision the power of the government in the exercise of the right of eminent domain, or the manner of its exercise. It must be large and liberal, so as to meet the public exigencies and demands, and it must be so guarded as to secure the rights of the citizen. The objection raised to the validity of this act is

certainly of a very grave character, and I have found much difficulty in answering it satisfactorily to my own mind. I am however, after the best consideration which I have been able to bestow upon the subject, of opinion that this act is not invalid for the reasons stated. The legislature has the undoubted authority to provide for the incorporation of railroad companies by a general act (*Const.*, *art.* 8, § 1), and it may by legislative enactment give to them powers, and impose duties, almost exclusively of a public character; and in such cases it may without doubt lawfully declare that all lands taken for the construction of their roads shall be deemed taken for public use. The act in question does all of these things, and it sufficiently declares the public necessity and utility of the roads. Nothing is delegated to the corporations but the right of determining when and where the roads shall be built. The objection that the power to determine these questions is confided to the corporation, instead of being exercised by the legislature or confided to some public officer or public body, seems to me to present rather a question of propriety and fitness, than one of power. The interests of the corporations and of the public, so far as the location and construction of their road are concerned, are so nearly identical that the power of location and time of construction may be safely intrusted to the corporations. It is not perceived that these companies can have any inducement to invest their capital in the construction of roads either when or where the public interest does not require them, as returns can be expected from their investments only from the construction of roads upon such routes as the public demands will warrant and sustain.

The question of the power of the legislature to confer upon such corporations the right to locate their roads, came before the supreme court of Massachusetts in the case of *The Boston Water-Power Co.* v. *The Boston and Worcester R. R. Co.* (23 *Pick.*, 360), and the case was elaborately discussed by eminent counsel, and received the most deliberate con-

Buffalo and New-York Railroad *against* Brainard.

sideration of the court, and the legislative right to confer this power was unanimously sustained. I refer to that case as authority justifying this mode of exercising the right of eminent domain.

The other objections raised on this appeal might have been avoided if they had been raised at the proper place and time; and therefore cannot be considered here. I am of opinion that the judgment of the court below should be affirmed.

MORSE, J., was not present

All the other judges concurring,

Judgment affirmed.