IN THE MATTER OF THE PETITION OF THE DEANSVILLE CEME-
TERY ASSOCIATION TO ACQUIRE TITLE TO LANDS OF ISAAC C.
MILLER AND WIFE.

The question whether the use for which private property is sought to be
taken, under and by the exercise of the right of eminent domain, is
public or private, is a judicial one, to be determined by the courts; the
grant by the legislature of the right to take, is not conclusive evidence
that the use is a public one.
The use of lands for the purposes of rural cemetery associations, incor-
porated under the general law (chap. 133, Laws of 1847, as amended by
chap. 280, Laws of 1852, and chap. 245, Laws of 1874), is private, not
public.
The provision, therefore, of the act of 1873 (chap. 452, Laws of 1873),
authorizing the taking of lands for the purposes of such an associa-
tion, by proceeding *in invitum*, is unconstitutional and void.
*In re Deansville Cemetery Association* (5 Hun, 482) reversed.

(Submitted June 6, 1876; decided September 19, 1876.)

APPEAL by Isaac C. Miller and wife, from an order of the
General Term of the Supreme Court in the fourth judicial
department, affirming an order of Special Term confirming
the report of a referee and appointing commissioners to appraise
the compensation to be paid appellants for certain lands pro-
posed to be taken by the petitioner, for the purposes of its
incorporation. (Reported below, 5 Hun, 482.)
The facts sufficiently appear in the opinion.

*O. S. Williams* for the appellants. The statutes under
which these proceedings were taken are unconstitutional and
void. (Const., art. 1, § 6; *Vose* v. *Cockroft*, 44 N. Y., 415;
*Delaney* v. *Brett*, 51 id., 78; 2 Kent's Com., 339, 340, and
notes [6th ed.]; *Townsend* v. *Morris C. and B. Co.*, 39 N.
Y., 174, 182; *R. and S. R. R. Co.* v. *Davis*, 43 id., 144;
*Bklyn Park Com.* v. *Armstrong*, 45 id., 244; *In re Fowler*,
53 id., 62; *Varrick* v. *Smith*, 5 Paige, 137; *Beekman* v. *S.
and S. R. R. R. Co.*, 3 id., 45; *Bloodgood* v. *M. and H. R.
R. Co.*, 14 Wend., 51; 18 id., 9; 5 Hun, 482.)

*Dennison & Everett* for the respondent. The propriety of taking private property for a public use is not a judicial question, but one of political sovereignty, to be determined by the legislature. (*People ex rel. Herrick* v. *Smith*, 21 N. Y., 595, 598; 42 id., 243, 244; *In re Townsend*, 39 id., 174; *Bloodgood* v. *M. and H. R. R. Co.*, 18 Wend., 9; *Haywood* v. *Mayor, etc.*, 3 Seld., 324, 325; *Beekman* v. *S. and S. R. R. Co.*, 4 Paige, 73; *Varick* v. *Smith*, 5 id., 159, 169.)

RAPALLO, J. This proceeding is instituted under the acts of the legislature in reference to acquiring title to real estate for burial purposes. The first act upon the subject was passed in 1869 (Laws of 1869, chap. 727), and authorized cities and villages owning burial grounds to acquire title to lands immediately adjoining such grounds, for burial purposes, by proceedings similar to those prescribed by the general railroad law for the acquisition of lands for railroad purposes.

This act was amended by the acts of 1870 (chapter 760), 1873 (chapter 452), and 1875 (chapter 206), so as to extend to incorporated cemetery associations. The present application is based upon the amendment of 1873 to section 1, which provides as follows:

" It shall be lawful for the common council of any city, the trustees of any incorporated village or the trustees of any incorporated rural cemetery association in this State (although such cemetery is disconnected from and out of the limits of any city or village) in cases where either such city, village or rural cemetery association needs lands, or an addition to what it has, for burial purposes, to purchase or acquire title to such lands," etc. etc.

The respondent is a cemetery association, incorporated under chapter 133 of the Laws of 1847. This act authorizes the formation of corporations for the purpose of procuring and holding lands to be used exclusively for the burial of the dead. It provides for the division of such lands into lots, under the direction of the trustees, and the sale by them of such lots upon such terms as shall be agreed. The first trus

tees are to be named in the certificate of incorporation; those succeeding them are to be elected by the lot owners. By the original act the lots descend to the heirs of the respective owners, but are inalienable except that heirs may release to each other. By chapter 245 of the Laws of 1874 (passed April 24, 1874, after the present proceedings were instituted, but before the order appealed from was made) the lot-owners were authorized, by leave of any court of record held in the county, to sell their lots, after the removal of the bodies interred therein.

By the act of 1847 (section 7, as amended by the act of 1852, chapter 280, section 1), the proceeds of lots sold by the trustees, are to be applied to the payment of the purchase-money of the lands acquired by the association and to the improvement and embellishment of the cemetery and incidental expenses, and to no other purpose.

The question argued before us on the present appeal is, whether the acts conferring upon these rural cemetery associations the right of eminent domain are constitutional and valid. It is claimed on the part of the appellants that they are invalid, for the reason that they assume to authorize the taking of private property for uses which are not public, but are private. The respondent maintains, first, that the legislature is the sole judge of the propriety of granting the right of eminent domain, and thus the courts cannot review its action; and secondly, that the use for which the lands in question are sought to be taken is, in fact, a public use.

The first point taken by the respondent has been too often considered by the courts to render discussion necessary. The right of taking the property of an individual without his consent is confined to those cases where the property is required for public use. Private property cannot be taken for private use even on making compensation. (*Taylor* v. *Porter*, 4 Hill, 140, and cases cited; *Embury* v. *Conner*, 3 N. Y., 511.) In both of these cases as well as in those referred to therein, the question whether the use for which the property was taken was public or private, was treated as a judicial question

and discussed and passed upon by the courts; and the same question has repeatedly been entertained in the numerous cases in the courts of this and our sister States in respect to granting the right of eminent domain to railroad corporations and authorizing the issue of town bonds for their benefit.

The cases cited by the counsel for the respondent, *People v. Herrick* (21 N. Y., 595); *Beekman v. Saratoga and S. R. R. Co.* (3 Paige, 73); *Varick v. Smith* (5 id., 159); *Bloodgood v. Mohawk, etc., Railroad Co.* (18 Wend., 9); *Haywood v. The Mayor, etc.* (3 Seld., 324); *Matter of Townsend* (39 N. Y., 174); *Brooklyn Park Com. v. Armstrong* (45 id., 243); *App. of Fowler* (53 id., 62), do not establish the proposition that the grant by the legislature of the right to take property of an individual, without his consent, on making compensation, is conclusive evidence that the use for which it is to be taken is a public use. Nor do they dispute the power and duty of the courts to determine whether the use is public or private, for the purpose of ascertaining whether or not the action of the legislature is valid. In *The Matter of Townsend* (39 N. Y., 174), it is conceded that even an express declaration by the legislature, that the use was public, would not be controlling. These cases decide that where the uses are in fact public, the necessity or expediency of taking private property for such uses, by the exercise or the delegation of the right of eminent domain, the instrumentalities to be used and the extent to which such right shall be exercised or delegated are questions to be determined by the legislature, and not by the courts. Whether the use is in its nature private or public is the question upon which the right of the legislature to interfere with private property depends. All the cases concede this principle. Whether the use is of a public or private nature can only be determined by a judicial inquiry; and all the cases in which the action of the legislature condemning or authorizing the condemnation of private property has been sustained, are founded upon the concession or adjudication that the use for which the property is taken is, in its nature, public.

The point upon which the present case turns, therefore, is the nature of the use for which the land in question is sought to be taken.  It is to be vested in trustees, with power to divide into lots and sell these lots to individual owners.  It is difficult to see what interest the public will have in the lands or in their use.  No right on the part of the public to buy lots or bury their dead there is secured.  The prices at which the lots are to be sold are to be fixed by private agreement; the corporation is to be managed by trustees elected by the lot owners.  The lots, or the rights of the owners therein, are to descend as private property to the heirs of these owners; and by the act of 1874 the owners may, by leave of the courts, sell their lots and put the proceeds in their pockets.  The substantial right of enjoyment of the property is vested in the individual lot-owners; and the whole effect of the incorporation of these cemetery associations is to enable a number of private individuals to unite in purchasing property for their own use and that of their descendants as a place of burial, and to secure a permanent management of it through the instrumentality of trustees appointed by themselves and subject to no other control, with the privilege, when they cease to use their lots as a place of burial, to sell them and receive the proceeds for their own benefit.

It is argued that the property is to be used as a place of burial and that the burial of the dead is a public benefit, and therefore, the use is public.  But the answer to this argument is, that the right of burial in these grounds is not vested in the public or in the public authorities, or subject to their control, but only in the individual lot-owners.  If the fact that it is a benefit to the public that the dead should be buried is sufficient to make a cemetery a public use, the legislature might authorize A to take the land of B for a private burial place of A and his family.  The fact that this land is taken for the benefit of a number of individuals for division among themselves or their grantees for their own use as a cemetery,

makes the case no stronger than if taken for the benefit of a single individual.

The orders of the General and Special Terms should be reversed, with costs, and the application of the petitioner denied.

All concur.

Ordered accordingly.