In the Matter of the Application of the NIAGARA FALLS AND WHIRLPOOL RAILWAY COMPANY to Acquire Lands of the DE VEAUX COLLEGE.

A railroad corporation, seeking to take property *in invitum* for the purposes of its road, must be able to show, first, a legislative warrant, and second, if the right is challenged, that the particular scheme in which it is engaged is a railroad enterprise within the true meaning of that term, or that the business it is organized to carry on is public, and that the taking of private property for its purposes is a taking for public use.

The question as to whether the uses are, in fact, public so as to justify such taking is a judicial one to be determined by the courts.

In determining that question the courts are not confined to, and it is not to be tested exclusively by the description of those objects and purposes as set forth in the articles of association, but evidence *aliunde*, showing the actual business proposed to be conducted, may be considered.

The ground upon which private property may be taken for railroad uses without the consent of the owner, is primarily that railroads are highways or improved public ways.

The articles of association of the N. F. & W. R. Co., a corporation organized under the General Railroad Act (Chap. 140, Laws of 1850), declare it is organized for the purpose "of constructing, maintaining and operating a railroad for public use and in transporting persons and property." The route described is from a point near the foot of the falls on the American side of the Niagara river, running thence "along the easterly margin and near the water's edge" of said river to a point below "The Whirlpool." In proceedings to condemn lands near the terminus of the route, it appeared that the river on the easterly side is faced by precipitous cliffs rising from a point near the water's edge. That the starting point of the proposed route is on lands owned by the state and the terminus upon private lands, and it can be reached only by passing

over state or private lands. There can be no habitations along the route and no traffic or business, except in conveying visitors at the falls over the road to see the river and " The Whirlpool." The season for visitors is, and the business of the proposed road will be, substantially confined to the summer months, and the road cannot be operated during the winter. *Held*, that the proposed road was not a highway in any proper or just sense of the term; and that, therefore, the use for which the land was sought to be taken was not a public one so as to justify the taking *in invitum*.

(Argued January 17, 1888; decided February 28, 1888.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made October 21, 1887, which affirmed in part and reversed in part an order of Special Term made on application for the appointment of a commission to appraise the value of lands sought to be taken by the petitioner for the purposes of its road. (Reported below, 46 Hun, 94.)

The Special Term order determined that sufficient cause had been shown against granting the prayer of the petition in reference to the parcel of land first described, and that no sufficient cause had been shown against granting the application as to the piece of land lastly described, and appointed commissioners to appraise the same. The General Term affirmed the first part of said order, but reversed the residue thereof.

The facts so far as material are stated in the opinion.

*Norris Morey* for appellant. The state by virtue of its sovereignty, may, in the exercise of the power of eminent domain, take the title to any or all the lands included within the limits of the state. (*Hayward* v. *Mayor, etc.*, 7 N. Y. 314, 324; *Rensselaer* v. *Patterson*, 98 U. S. 403, 406; Cooley on Const. Lim. m. p. 524 *et seq.*; id. 527, *note*; *Kohl* v. *United States*, 91 U. S. 367, 372; *West River Bridge Co.* v. *Dix*, 6 How. [U. S.] 507; *In re N. Y. L. & W. R. R. Co.* 99 N. Y. 23; *Met. Gas-Light Co.* 63 id. 326, 329; *Eastern R. R. Co.* v. *B. and M. R. R. Co.* 111 Mass. 128.) Public corporations are such as are established for public purposes exclusively — that is, for purposes connected with the administration of civil or local government; and

corporations are public only when the whole interests and franchises are the exclusive property and domain of the government itself. (1 Dillon on Municipal Corporations, §§ 29, 30; Field on Corporations, §§ 3, 35; *Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Society, etc.*, v. *Town of New Haven*, 8 Wheat. 464.) None of the property of De Veaux College is devoted to uses which the law regards as public uses. (*Chenango Bridge Co.* v. *Binghamton Bridge*, 27 N. Y. 104; *Charles River Bridge Co.* v. *Warren Bridge Co.* 11 Peters, 420; *Penn. R. R.* v. *Canal Com'rs*, 21 Penn. St. 9, 22; Cooley's Const. Lim. 488; *East Hartford* v. *Hartford Bridge Co.* 10 How. [U. S.] 534; *People* v. *Kerr*, 27 N. Y. 198, 199; *In re Boston & Albany R. R. Co.*, 53 id. 574; *Met. Gas-Light Co. Case*, 63 id. 326, 334; *In re Village of Middletown*, 82 id. 196, 199; *In re Deansville Cemetery Association*, 66. id. 569; *Met. G. L. Co.* 63 N. Y., 326, 334; *Weismer* v. *Douglas*, 64 id. 91; *In re Jacobs*, 98 id. 111; *In re Eureka Basin W & H. Co.* 96 id. 42; *Jenkins* v. *Anderson*, 103 Mass. 94; *In re Belfast Academy*, 11 Me. 109; *Allen* v. *Jay*, 60 id. 124; *Loan Association* v. *Topeka*, 20 Wal. 655; *Lowell* v. *Boston*, 111 Mass. 454; *Curtis* v. *Whipple*, 24 Wis. 350; Mill on Eminent Dom., § 14; Cooley on Const. Lim. [5th ed.], 658, 659; Cooley on Taxation [2d ed.], 121, 122.) Unless all the citizens within a certain defined district have a legal right under the same terms and conditions to the enjoyment of the use which is claimed to be public, there is no public use upon which the exercise of the right of eminent domain can be based. (*Jenkins* v. *Anderson*, 103 Mass. 94; *Curtis* v. *Whipple*, 24 Wis. 350; *In re Belfast Academy*, 11 Me. 109; Cooley's Const. Lim. [marginal page], 469, Constitution of New York, article 1, § 3.) The respondent has failed to establish, as matter of fact, that the premises sought to be condemned in this proceeding are actually employed in or are material or necessary to any public use or purpose in its hands. (Mills on Eminent Domain, § 47; *In re City of Buffalo*, 68 N. Y. 167,

171; *Met. G. L. Co. Case*, 63 id. 334; *In re Albany street*, 11 Wend. 148; *Embury* v. *Conner*, 4 N. Y. 511; *In re Rochester Water Commissioners*, 66 id. 418; *P. P. & J. R. R. Co.* v. *Peoria R. R. Co.*, 66 Ill. 174; *N. C., etc., R. R. Co.* v. *C. C. R. W. Co.*, 83 N. C. 489; *Iron R. R. Co.* v. *Ironton*, 19 Ohio St. 299, 305; *Baltimore, etc., R. R. Co.* v. *P. W. & K. R. R. Co.*, 17 W. Va. 812, 850, 858; *In re City of Buffalo*, 68 N. Y. 167, 175; *Prospect Park & Coney Island R. R. Co.* 91 id. 552; 1 Wood's Railway Law, 681, 682; *Darlington* v. *Mayor, etc.*, 31 N. Y. 164, 194, 195.) The proofs show that the petitioner had so located its road as to entitle it under the statute, to institute a proceeding to acquire the lands described in the petition. (§ 1 chap. 82, Laws of 1882 amending § 4 of chap. 282 of the Laws of 1854; 2 R. S. [7th ed.] 1549, § 14.) There is no restraint upon the power of taking lands by the right of eminent domain, except that requiring compensation to be made. The appropriation of the property is an act of public administration, and the form and manner of its performance is such as the legislature shall, in its discretion, prescribe. (*People* v. *Smith*, 21 N. Y. 598, 599; *Baker* v. *Johnson*, 2 Hill, 342; *Reiter* v. *Stryker*, 63 N. Y. 136, 141; *Chapman* v. *Gates*, 54 id. 132, 143; *People* v. *Smith*, 21 id. 595; *In re Townsend*, 39 id. 171; *In re United States*, 96 id. 227; *In re Union Ferry Co.*, 98 id. 139, 153; *Heintz* v. *L. I. R. R. Co.*, 13 Barb 646; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302.) The respondent's proofs did not establish that any of the lands included within the route of the petitioner were in actual occupation of any person or corporation. (*Redfield* v. *U. & S. R. R. Co.*, 25 Barb. 54; *People* v. *Supervisors of Allegany Co.*, 36 How. 544; *Brown* v. *Volkening*, 64 N. Y. 76, 80.) The legislature or the commissioners of the Niagara state reservation may grant a license to the petitioner to lay its tracks along its line as located. (*In re Thirty-fourth Street R. R. Co.*, 102 N. Y. 343, 354; *In re N. Y. C. & H. R. R. R. Co.*, 77 id. 257, 260; *In re Staten Island R. T. Co.*, 103 id. 251; *Mohawk Bridge Co.* v. *Utica, etc.*, 6 Paige, 554; *Mason* v. *Brooklyn & Newtown*

*R. R. Co.*, 35 Barb. 373; *Farmers' Turnpike Road* v. *Coventry*, 10 Johns. 399; *Fall River Iron-Works* v. *Old Colony, etc., R. R. Co.*, 5 Allen, 221; *Union Pacific R. R. Co.* v. *Hall*, 91 U. S. 348; *Park's Appeal*, 64 Penn. St. 137; 2 Wood's Railway Law, 745, 746, 762; 3 Stewart [N. J.], 566; *National Docks Co.* v. *Central R. R. Co.*, 5 id. 755; *State* v. *Receiver of Taxes*, 9 Vroom. 299; *State* v. *Hudson Tunnel Co.* id. 548.) The proofs show conclusively and without dispute that the lands described in the petition are necessary for a roadway for the petitioner's railroad. (*In re S. I. R. T. Co.*, 103 N. Y. 251; *In re N. Y. C. & H. R. R. R. Co.*, 77 id. 248; *In re Kip*, 46 id. 547; *In re N. Y. L. & W. R. R. Co.*, 99 id. 13.) There is no foundation for the objection made that the petitioner is not a corporation organized to construct a railway for public use, and, therefore, has no right to institute any proceedings to take lands for its purposes. (Chap. 82, Laws 1882, amending § 4 of Chap. 282, Laws 1854; Chap. 384, Laws 1883, amending § 6 of Chap. 293, Laws 1879; 1 Wood's Railway Law, 646; *Railroad Co.* v. *Town of Lake*, 71 Ill. 330; Pierce on Railroads, 146.) The taking of lands for the construction of a railroad organized under the general railroad act of this state is a taking for public use. (Pierce on Railroads, 143; Mills on Eminent Domain, § 14; *Beekman* v. *Saratoga, etc., R. R. Co.*, 3 Paige, 73; *Varick* v. *Smith*, 5 Paige, 159; *Bloodgood* v. *Mohawk, etc., R. R. Co.*, 18 Wend. 9; *B & N. Y. R. R. Co.* v. *Brainard*, 9 N. Y. 100; *Heywood* v. *Mayor, etc.*, 3 Seld. 324; *In re N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 551; *People ex rel. D., etc., R. R. Co.* v. *Batchellor*, 53 N. Y. 139; 2 Kent's Comm. 340; 1 Wood's Railway Law, 650; *In re Cooper*, 28 Hun, 515; Pierce on Railroads, 144; *R. R. Co.* v. *Davis*, 33 N. Y. 142; *In re N. Y., L. & W. R. R. Co.*, 99 id. 24; *In re Mt. Washington R. R. Co.*, 35 N. H. 134; *P. P. & C. I. R. R. Co.* v. *Williamson*, 91 N. Y. 552.)

*A. K. Potter* for respondent. The scheme contemplated by the construction of the proposed railroad is not one which

entitles the petitioner to invoke the right of eminent domain. That right existing in the sovereignty of the state, can be exercised only in behalf of some enterprise by which a public use and benefit is to be subserved and promoted. (*In re N. Y. and H. R. R. Co.* v. *Kip*, 46 N. Y. 546; 1 Rorer on Railroads, ·291; Mills Em. Domain, 48; *In re Deansville Cemetery Association*, 66 N. Y. 569; *In re Ryers*, 72 id. 1; *Burt* v. *Ayers*, 19 Hun, 17; *N. Y. C. R. R. Co.* v. *Met. Gas-L. Co.*, 63 N. Y. 326; *R. & S. R. R. Co.* v. *Davis*, 43 N. Y. 137, 145; Chap. 282, § 2, Laws 1854; 66 N. Y. 569; Chap. 198, § 1, Laws 1876). When the legislature has expressly set aside property to a definite use, whether that use in its strict legal sense be public or not, it should have the same protection as lands held in trust for a public use, and nothing short of express authority should divert such property from the use to which it was so devoted. (*St. Louis R. R. Co.* v. *Blind Institute*, 43 Ill. 303.) The use to which these lands are devoted by the will and legislative enactments before cited is public, and they are held in trust therefor. (Chap. 243, Laws 1853, § 1; Chap. 385, Laws 1857; Chap. 295, Laws 1883; Mills on Eminent Domain, §§ 12, 13, 17, 21; Chap. 800, Laws 1866; Chap. 819, Laws 1867; Wood on Railroads, §§ 226, 642; *In re N. Y. L. & W. R. R. Co.*, 99 N. Y. 12, 23, 24; *In re N. Y. C. & H. R. R. R. Co.* v. *M. G. L. Co.*, 63 id. 326, 334.) Being now held for a public use and held in trust for such public use, these lands are not subject to condemnation for another. (*In. re B. & A. R. R. Co.*, 53 N. Y. 574; *In re Rochester Water Commissioners*, 66 id. 413, 418; *In re Applicatioa of City of Buffalo*, 68 id. 167; *Prospect· Park & C. I. R. R. Co.* v. *Williamson*, 91 id. 552; *In re Petition of N. Y. L. & W. R. R. Co.*, 99 id. 12.)

Andrews, J. There is a question in *limine* which it is necessary to decide in favor of the petitioner, before the other questions argued become material. This is the question, whether the purposes for which The Niagara Falls & Whirl-

pool Railway Company is organized, are public in such a sense as to justify the taking of lands *in invitum* for the construction of its road, in the exercise of the power of eminent domain. The Niagara Falls & Whirlpool Railway Company is a corporation, organized in January, 1886, under the General Railroad Act of 1850. The articles of association declare that the company is organized for the purpose of "constructing, maintaining and operating a railroad for public use in transporting persons and property, of the gauge of not more than three feet six inches, and not less than thirty inches within the rails." The route of the road is described as "commencing at a point near the foot of the Inclined Railway which extends from Prospect Park to near the easterly margin of Niagara river, such point of beginning being a short distance below the foot of the American Falls on the American side of the Niagara river in the county of Niagara, and running thence (by the most direct and feasible route) along the easterly margin and near the water's edge of said Niagara river, and terminating at a point on said easterly margin of said Niagara river, about four hundred feet below and northerly from the foot or outlet of the portion of Niagara river, commonly known as The Whirlpool."

It is necessary to a just understanding of the question presented, to refer to some additional facts disclosed by the evidence. The Niagara river, from the foot of the American Falls, flows northerly for several miles with a very rapid current, and the river on either side is faced by precipitous cliffs, the cliff on the American side rising from near the edge of the river to a height of from one hundred and fifty to two hundred feet, to the table land above. The river from the falls to the point known as the "The Whirlpool," a distance of about three miles, is interesting, and persons visiting the falls have been enabled by means of what is known as an Inclined railway to descend from the top of the bank or table land, to the margin of the river. This railway was originally a private enterprise, but is now included in the land taken by the state for a state reservation.

The "Whirlpool" adjoins the lands of De Veaux College. The college has constructed a stairway leading down to the margin of the river at this point for the convenience of visitors, and derives a revenue from its use. The petitioner has located its road along the margin of the river, outside of the cliff, where the space is sufficient between the cliff and the river to permit the track to be laid and at other points where the cliff rises with more abruptness from the margin, the location contemplates cutting into the face of the cliff for the roadway. The proposed road does not connect at either end with a highway. It can be reached only by passing over the lands of the state or the lands of private owners. There can be no habitations along the line of the road, and no traffic, or commerce, or business, except in conveying passengers over the road to see the river and "The Whirlpool," and returning them again to the point from which they started. The season for visitors at the falls is substantially confined to June, July, August and September. The proposed road cannot be operated during the winter on account of the piling up of the ice, and if its operation was practicable in the winter season it would have nothing to do. It is apparent that the proposed enterprise has been undertaken and is to be carried on for the sole purpose of furnishing sight-seers during about four months of the year, greater facilities than they now enjoy for seeing the part of Niagara river along which the proposed road is to be constructed. Soon after the passage of the General Railroad Act of 1850, the question was raised as to the validity of the act in so far as it attempted to confer upon any corporation which might thereafter be created under its provisions, the power to determine when and what private property might be compulsorily taken for the purposes of its road, and it was held that the act was a constitutional delegation of the power of eminent domain. (*Buffalo, etc., R. R. Co* v. *Brainard*, 9 N. Y. 100.) The expediency of this legislation has been questioned. In the infancy of railroad enterprises there was little danger that railroads would be projected not required by public necessity, or where the public interests

would not be subserved by their construction.  But the plan of permitting any persons who might deem it for their interest to do so, to unite and organize a railroad corporation and to fix the route, subject practically to no supervision or control by any public authority, and to invade and take private property for the purposes of the road wherever the company should see fit to locate it, is attended with some unquestionable evils.  It is probably true that many speculative railroad enterprises have been initiated and carried on under this liberal legislation, which would not have been authorized if a special charter in each instance had been required, or if the power of determining as to the necessity of the road had been lodged with some disinterested public body.  The right of the state to authorize the condemnation of private property for the construction of railroads and to delegate the power to take proceedings for that purpose to railroad corporations, has become an accepted doctrine of constitutional law and is not open to debate.  But the power is dormant until the legislature authorizes its exercise, and the particular corporation which claims the right to exercise the power, must be able to show a legislative warrant, and that being shown, it must be able further to establish, if the right is challenged, that the particular scheme in which it is engaged is a railroad enterprise within the true meaning of the decisions which justify the taking of private property for railroad purposes, or that the business which it is organized to carry on is public, and that the taking of private property for the purposes of the corporation is a taking for public use.  The general principle is now well settled that when the uses are in fact public, the necessity or expediency of taking private property for such uses by the exercise of the power of eminent domain, the instrumentalities to be used and the extent to which such right shall be delegated are questions appertaining to the political and legislative branches of the government, while on the other hand the question whether the uses are in fact public, so as to justify the taking *in invitum* of private property therefor, is a judicial question to be determined by the courts.

(*Beekman* v. *Saratoga & Schenectady R. R. Co.*, 3 Paige, 45; *In re Deansville Cemetery Association*, 66 N. Y. 569; *In re Application Union Ferry Co.*, 98 id. 139–153.)

If the question, whether the purposes and objects for which the petitioner, The Niagara Falls & Whirlpool Railway Company is organized, are public, so as to justify the exercise in its behalf of the right of eminent domain, is controlled and is to be tested exclusively by the description of those objects and purposes as they are set forth in its articles of association, there could be no hesitation in concluding that the company is entitled to take the proceedings now in question, unless, as is claimed, the particular property now sought to be taken is, on special grounds, exempt from condemnation. Looking at the articles of association alone, it appears that the company is a railroad corporation organized under the General Railroad Act for " public use in transporting persons and property " by a railroad to be constructed between certain termini. The papers on their face show that the corporation has undertaken an ordinary railroad enterprise within the purview of the act of 1850, in aid of which the power of eminent domain may be appropriately exercised. But when we look beyond the formal documents, and the actual business proposed to be conducted is considered, we find that the proposed railroad has no proper termini; that it is not a highway in any just or proper sense; that it cannot, by reason of necessary limitations, perform one part of the duty it has undertaken, viz., the transportation of freight; that at most it can be operated but a portion of the year, and that the sole object of its construction is to enable the corporation, for a compensation to be received, to provide for the portion of the public who may visit Niagara Falls, better opportunities for seeing the natural attractions of the locality. We feel constrained to say that in our judgment this is not a public purpose which justifies the exercise of the high prerogative of sovereignty invoked in aid of this enterprise. The right of the company being challenged on this ground, the court is compelled to consider it, and it is manifest that the inquiry is not precluded because

the petitioner has organized itself under the General Railroad Act and has assumed in its articles of association the character of an ordinary railroad corporation. What is a public use is incapable of exact definition. The expressions *public interest* and *public use* are not synonymous. The establishment of furnaces, mills and manufactures, the building of churches and hotels, and other similar enterprises, are more or less matters of public concern, and promote, in a general sense, the public welfare. But they lie without the domain of public uses for which private ownership may be displaced by compulsory proceedings. The ground upon which private property may be taken for railroad uses, without the consent of the owner, is primarily that railroads are highways furnishing means of communication between different points, promoting traffic and commerce, facilitating exchanges, in a word they are improved ways. In every form of government the duty of providing public ways is acknowledged to be a public duty. In this state the duty of laying out and maintaining highways has in the main been performed directly by the state or by local authorities, but from an early day the legislature has from time to time delegated to turnpike corporations the right and duty to maintain public roads in localities, and canal companies have been organized with powers of eminent domain. It would be impracticable and contrary to our usages for the state to enter upon the general business of constructing and operating railroads, and, in analogy to the delegation of the power of eminent domain to turnpike and canal companies, it wisely delegates to corporate bodies the right to construct and maintain railroads as public ways for the transportation of freight and passengers, and as incident thereto the right to take private property under the power of eminent domain on making compensation. In considering the question what is a public use for which private property may be taken *in invitum*, Judge Cooley, (Const. Lim. 669), remarks, "that can only be considered · such when the government is supplying its own needs, or is furnishing facilities for its citizens in

regard to these matters of public necessity which on account of their peculiar character, and the difficulty, perhaps impossibility, of making provision for them otherwise, it is alike proper, useful and needful for the public to provide." Whatever rule, founded on the adjudged cases may be formulated on this subject, it cannot, we think, be framed so as to include the present case. The fact that the road of the petitioner may enable the portion of the public who visit Niagara Falls, more easily or more fully to gratify their curiosity, or that the road will be public in the sense that all who desire will be entitled to be carried upon it, is not sufficient, we think, in view of the other necessary limitations, to make the enterprise a public one so as to justify condemnation proceedings. The case does not, we think, differ in principle from an attempt on the part of a private corporation, under color of an act of the legislature, to condemn lands for an inclined railway, or for a circular railway, or for an observatory, to promote the enjoyment or convenience of those who may visit the Falls. The state has, under recent legislation, taken lands for a park or public place at Niagara Falls. The taking of lands by municipalities for public parks is recognized as a taking for public use. (*Brooklyn Park Commissioners* v. *Armstrong*, 45 N. Y. 234; *In re Mayor, etc.*, 99 id. 569.) They contribute to the health and enjoyment of the people and are laid out with drives and ways for public use. The proceedings in the case of *The Nahant Road* (11 Allen, 530) and *The Mount Washington Road* (35 N. H. 134), were justified on the ground that they were public highways in the ordinary sense, although primarily intended as pleasure drives. It is, as we have said, difficult to make an exact definition of a public use. It is easier to define it by negation than by affirmation. We are conscious of the serious responsibility which the court assumes in undertaking to declare that not to be a public use, which the legislature has declared to be such. The validity of an act of the legislature is not to be assailed for light reasons. It is especially necessary that the question of what constitutes a public use, should not be dealt with in

a critical or illiberal spirit, or made to depend upon a too close construction adverse to the public. But having these considerations in mind, we are nevertheless constrained to conclude that the enterprise in question, is essentially private and not public, and that private property cannot be taken against the will of the owners for the construction of the road of the petitioner.

The order appealed from should, therefore, be affirmed.

All concur.

Order affirmed