### In re CITY OF BUFFALO.

(Superior Court of Buffalo, General Term.  June 16, 1891.)

EMINENT DOMAIN—STREET CONDEMNATION—RIGHTS OF OWNERS.

Where the legislature confers on a municipality the power to acquire the fee of one of its streets, a proceeding by the common council for that purpose regularly conducted, wherein it is declared that the land of a certain street owned by individuals shall be taken "in fee for public streets," is conclusive upon the courts, and the owners cannot be permitted to introduce evidence to show that the street is intended to be taken for a purpose other than that declared. HATCH, J., dissenting.

Appeal from special term.

Application by the city of Buffalo to take the fee of the terrace for street purposes. From a judgment for applicant, Paschal P. Pratt, a claimant of a portion of the premises taken, appeals.

Argued before BECKWITH, C. J., and HATCH, J.

John G. Milburn, for appellant.    George M. Browne and William F. Mackey, for respondent.

BECKWITH, C. J.    This is a proceeding instituted by the common council of the city of Buffalo to take the fee of the lands within the boundaries of the street called "The Terrace," formerly "Busti Terrace."   By the charter, the city is empowered to take the fee, if the place has been a public street more than 10 years.   The appellant is the owner of a lot of land fronting 215 feet on the terrace, and he owns the fee to the middle line of the street.   He appeared by counsel on the application of the city for the appointment of commissioners of appraisal, and, "by his answer, alleged that the city was not seeking to acquire the lands in question for a street, but to carry out a contract between the grade-crossing commissioners and the New York Central & Hudson River Railroad Company, which, he alleged, was in excess of their powers, and void.   The answer contained the further specific allegations "that the said contract provided, amongst other things, for the excavation by said railroad company of a deep cutting through and along said Busti terrace, and the construction therein of railroad tracks; that in truth and in fact this proceeding is not instituted by such applicant in good faith, nor for the purpose of acquiring the fee of said premises for public streets, but solely for the purpose of enabling compliance with the said illegal and unauthorized contract so made by the said commissioners."   The grade-crossing commissioners were a board created by statute to make arrangements and agreements on behalf of the city with railroad companies for crossings of public streets less dangerous to life than crossings at grade, as heretofore existing, and it was claimed that the contract referred to was void because in a form not authorized by statute.   On objection by the city attorney to the sufficiency of the answer, the court overruled it, and refused to receive evidence in support of its allegations.   From this decision of the judge at special term the appeal is taken.

It is suggested by the appellant's counsel that the ground upon which this decision was made must have been that the resolution of the common council which declared the purpose was conclusive, and therefore he claims that the ruling was erroneous.   It is contended on behalf of the appellant, with a citation of cases supporting the contention, that the court had jurisdiction to inquire whether the purpose for which the fee was to be taken was a public street or not, and that it was error, therefore, to exclude the appellant's proof upon that subject.   "We maintain," reads the brief, "that, even if the preliminary steps were on their face regular, commissioners should not have been appointed if the fee of the terrace was not being acquired for a street, but for another purpose, and that we were entitled to a hearing on that issue;" and in another part of the appellant's printed argument he says: "The court,

in this proceeding, should have allowed us to show the real purpose for acquiring the fee of the lands in question, and, if it was an unauthorized purpose, it should not have made the order appealed from." It is to be observed that the proceedings conducted by the city were regular, and in conformity with the provisions of the city charter, and that the resolutions of the common council stated and declared that the lands were to be taken "in fee for public streets." Undoubtedly, the court has power to make a preliminary inquiry whether the purpose or use for which land is proposed to be taken is a public use, and by proofs *aliunde*, if necessary; and so, notwithstanding a legislative declaration that the object or use is a public one. *In re Niagara Falls, etc., R. Co.*, 108 N. Y. 375, 15 N. E. Rep. 429. But notwithstanding the apparent correctness of the appellant's deduction that the court, having the jurisdiction to inquire whether the purpose for which land is taken is a public use, ought to have exercised its jurisdiction in this case, and heard the appellant's proof in support of the charge that the purpose of the city in taking the fee was not in fact for a public street, still the contention of the appellant is, I think, an erroneous one, and belongs, as it seems to me, to that "multitudinous body of erroneous reasonings where the error originates in and is continued through the argument by the ambiguous use of terms. Here, in legal view, the purpose for which the land is to be taken is the purpose for which, in fact and law, it will be taken at the conclusion of the proceedings, as a legal consequence of them. The declared purpose is to take the fee for a public street. The proceeding, conducted regularly, will result in a taking of the land, authenticated by the record, for use as a public street. But it is contended by the appellant that the real purpose is to use the land eventually, and necessarily after the city has acquired the title by this proceeding, for railroad purposes,—to allow a deep cut to be made through the street for railroad tracks. That purpose is quite a different thing from the purpose which is the legal result of the proceeding. The latter is the purpose for which the land will be taken. The legal title which the city will acquire will be held for that purpose; the city will unavoidably become vested with and will hold the title in trust for the uses of a public street. The other purpose of which the appellant speaks is plainly the ulterior use to which, it is alleged, the common council intend to appropriate the land after the city has acquired the fee. That is the purpose that is in the mind of the legislative authorities as a mental condition. It is quite a different thing from the objective situation into which the title of the land is to be placed. In respect to the propriety of taking the fee of a street, the common council is vested with legislative powers. The legislative power is independent of judicial power, and the motives and mental processes of legislative bodies, if the result of their proceedings must be legal, cannot be inquired into by the courts. *Milhau* v. *Sharp*, 15 Barb. 193. If this proceeding is carried through regularly to a conclusion, when the report of the commissioners shall be confirmed, the city will have acquired the fee for the uses of a public street. That a street is a public use does not admit of discussion; but that a public street is not a public use is not what the appellant wants to show; but that is as far as the court has jurisdiction to go. If the common council, conceiving that it would be for the interest of the people, had instituted proceedings to take lands for the maintenance and use of the panorama of the battle of Gettysburg, an answer that that was not a public use would not have been so plainly demurrable. In the appellant's contention it is assumed correctly, as a primary proposition of law, that the court may inquire whether the purpose for which land is to be taken is a public use; but, as the argument proceeds, an ulterior purpose existing in the mind of the legislative body is substituted for that purpose, which is the declared spirit of the proceeding, and respecting the character of which the court has judicial authority to inquire. Lands may be taken only for public use; and it follows clearly that it is only within the province of the

courts to determine whether there is agreement or disagreement between the fact and the rule of law,—whether the use for which it is declared the lands are to be taken is a public use.    That is a judicial process quite different from an investigation as to what fraudulent or illegal purposes are existing in the minds of the members of the legislative body.    It is essential to a legal exercise of the power of eminent domain, at least as evidenced by the universal practice, that the purpose or object for which private property is taken should be declared; and the fact, therefore, which falls under judicial cognizance is whether the use for which it is declared the property is to be taken is a public use.    For reasons thus imperfectly stated I am of the opinion that the order appealed from should be affirmed.

HATCH, J., (*dissenting.*)    The lands proposed to be taken consist of the fee of a certain open space in the city of Buffalo called "The Terrace."    It has for more than 10 years last past been used as a public street; the fee to the same residing in the owners of abutting property, of which Pratt, the appellant, is one.    The proceedings instituted by the city of Buffalo were duly taken under and in pursuance of its charter, are in all respects regular, and conferred jurisdiction upon the court to entertain the same.    Upon application for the appointment of the commissioners, Pratt appeared and made preliminary objection, based upon irregularity in the papers, and that the law under which the proceedings were instituted had been repealed.    These objections being overruled, he then sought to raise an issue of fact for the determination of the court, and to that end tendered an answer alleging, among other things, that certain persons appointed commissioners under and by virtue of an act of the legislature providing for the relief of said city, and to change and regulate the crossing and occupation of streets, etc., in said city by railroads, were authorized to enter into a contract on behalf of the city with any railroad or other company using the streets, for relief from their present obstruction by such use, in pursuance of a certain plan theretofore recommended by a commission of engineers, and then on file in the office of the city engineer.    That said commissioners, claiming to act for the city, entered into a contract with the New York Central & Hudson River Railroad Company, ostensibly in pursuance of the powers conferred by said act, but that in fact such contract was not for the relief of said city, was not in pursuance of the said plan, and not within the authority conferred by said act, and is void.    That said contract provides for a deep cut through the Terrace, and the laying of railroad tracks therein.    That this proceeding is not taken in good faith, nor for the purpose of acquiring the fee of said premises for public streets, but solely for the purpose of enabling compliance with the said illegal and unauthorized contract made by said commissioners.    The tender of the answer was refused, proof of the facts thereof denied, and the commissioners were appointed.    This ruling proceeded upon the theory that, the legislature having delegated to the city power to acquire the fee of such streets, the proceedings being regular, and the facts essential to a proper case for the exercise of the power appearing therein, it was conclusive upon the court, and that the owner could not be heard to contradict or overthrow it.    This presents the only question argued upon this appeal.    The city is authorized by its charter to take, in fee, for public streets, alleys, and squares, the lands situate within the boundaries of such places which have been or shall have been used as public streets, alleys, or squares for more than 10 years.    Charter, tit. 8, § 22.    The proceedings to acquire title are the same as in other proceedings authorizing the exercise of the power of eminent domain by said city, except that the only notice required is that of publication.    Id. § 23.    When the necessary steps have been taken, the city is required to make application to the court for the appointment of commissioners.    "Such court shall hear such application, and may appoint three commissioners to ascertain the just compensation to be made for such lands."    Id. § 5.

By section 22 it is seen that the city is only authorized to take the fee for a specified purpose, *i. e.*, for public streets, etc. Any attempt, therefore, to take the fee for any other purpose must fail for want of authority to support it. No difference of opinion can arise as to this. But the question is, who determines this fact? Is the legislative declaration conclusive, or is such declaration the subject of review by the court? If the declaration of the body authorized to institute the proceedings should show a purpose outside the authority granted, then it would doubtless not be questioned but that it would be the duty of the court to refuse to appoint commissioners. If, in fact, the body vested with the power to institute the proceedings should do so maliciously and corruptly, for the purpose of inflicting injury, or for the purpose of taking property ostensibly for one purpose, lawful and authorized, but really for the purpose of vesting it in another, or the right of its use in another, could not such fact be shown to defeat it, although the proceedings were upon their face regular? If not, then the provision of the charter that the court shall hear the application, and may appoint the commissioners, is limited to a scrutiny of the papers to determine whether they are regular upon their face, and *prima facie* show a proper case, but the owner is without right to contest the application, and the court is without power to aid him. That this construction of the respective powers can be used to the great detriment and injury of owners of the fee of a street, with the right of easement in the public, is clearly shown by the opinion of BECKWITH, C. J., in *Re City of Buffalo*, 15 N. Y. Supp. 123, where it is clearly and ably demonstrated that the owner of the fee burdened with an easement is entitled to compensation for additional burdens placed thereon to his damage and injury, while with the fee taken this burden may be granted by the city for such use, and the owner left without remedy. I do not think such is the construction; on the contrary, the construction to be given this section is like that involved in *Re Park Commissioners*, 1 N. Y. Supp. 764; there the language was, "the court shall confirm the report;" and the court held that the judicial function of examination and determination was not excluded, but it was to be exercised. So, here, the language that the court "shall hear such application" carries with it all necessary powers for the exercise of the judicial functions, not alone upon the case presented by the applicant, but also upon the case presented by the owner, and determine—*First*, whether the proceedings are in compliance with the statute: and, *second*, whether the property to be taken is taken, in fact, for an authorized public purpose; and, if such latter fact be contested, then the court shall hear proof on such issue, and determine such application. It is conceded that this conclusion is sustained by authority. In *Re Niagara Falls, etc., R. Co.*, 108 N. Y. 383, 15 N. E. Rep. 429, it is said by Judge ANDREWS: "The general principle is now well settled that, when the uses are in fact public, the necessity or expediency of taking private property for such uses by the exercise of the power of eminent domain, the instrumentalities to be used, and the extent to which such right shall be delegated are questions appertaining to the political and legislative branches of the government; while, on the other hand, the question whether the uses are in fact public, so as to justify the taking *in invitum* of private property therefor, is a judicial question to be determined by the courts." In this case the court looked beyond the purpose of the articles of association, which showed upon their face compliance with the law, authorizing a charter, and the exercise of the power of eminent domain, and determined, as a fact, that the enterprise was not a public one, although the legislature had so declared it. Judge RAPALLO, in speaking of the cases sanctioning the right of the legislature to take the property of an individual without his consent, says: "Nor do they dispute the power and duty of the courts to determine whether the use is public or private, for the purpose of ascertaining whether or not the action of the legislature is valid. In *Re Townsend*, 39 N. Y. 174, it is conceded that even an express declaration by the legislature that the use was public would

not be controlling." *In re Deansville Cemetery Ass'n*, 66 N. Y. 572. The conclusion was reached, in that case, that if the purpose for which the property was taken was, in fact, for a public use, then it rested with the legislature, either of itself or to delegated bodies, to exercise the power, but whether the use was public or private was to be determined solely by judicial inquiry. In *Re Ryers*, 72 N. Y. 1, Judge FOLGER said: "It is still for the judiciary to see to it  *  *  *  that the purpose to be reached is public. And with all that has been said in oral argument, and presented upon the printed points, no facts appear upon the record, nor does there appear to have been any attempt to show them, to the end that the purpose of the work contemplated in this case is not public." This language seems to imply that the right exists to attack proceedings, taken in pursuance of a statute authorizing the exercise of the power of eminent domain, where the proceedings upon their face are regular, and declared to be for a public purpose. This could only be done in that case by proof *aliunde* the record; but facts tending to establish that in fact the purpose for which the proceeding was instituted was not a public one would be competent for the court to take judicial cognizance of in determining such question. If it was proper in that case, I see no reason why it is not equally so in every other, where the power is sought to be exercised. In *Re Jacobs*, 98 N. Y. 111, Judge EARL said: "The legislature may condemn or authorize the condemnation of private property for public use, and it may, in the exercise of its discretion, determine when and upon what property the power of eminent domain may be exercised; but its exercise is not beyond the reach of judicial inquiry. Whether or not a use is a public one, which will justify the exercise of the power, is a judicial question."

These authorities seem to firmly settle that the power cannot be exercised except for the specified purpose, and that whether it is for the specified purpose or not does not rest upon the declaration of the legislature or its authorized body alone, but in each case it rests upon what the fact is; and if, in fact, the proceeding is not for a public purpose, then it is the duty of the court to so declare it, and refuse its sanction. Here the answer tendered, and the proof offered under it, which we must assume would have been made, tends to show, as a fact, that the fee of this street is wanted, not for a street or for a street purpose, but to aid in carrying out an illegal agreement, void under the act authorizing it, and for the purpose of enabling a railroad to make a deep cut through this street. This, if true, shows the property is not intended for the public use claimed, to-wit, a street, but for unlawful and private uses. It may be entirely true that the end sought by the city is to make the streets, and the one of which the fee is sought to be taken, more available for street purposes; but upon these subjects, and issues thus raised, the owner is entitled to be heard, and have the judgment of the court based thereon. His claim is that, under the guise of the right of eminent domain, his property is being taken for a purpose not authorized by the delegated power, but for one entirely different. If this be so, then he is entitled to the judgment of the court establishing it. The law does not tolerate the disposition of property by indirection where it cannot be directly done. Thus, under the guise of the taxing power, a person may not be despoiled of his property, (*Weismer* v. *Village of Douglas*, 64 N. Y. 91;) and, under the claim of police regulations, the liberty and property of the citizen may not be arbitrarily invaded or taken away, (*In re Jacobs*, 98 N. Y. 98.) So, here, the declaration of the fact by the council is not conclusive, but may and should be inquired into upon the issues presented. It is further urged that the charter does not contemplate or provide for the serving of an answer, but it does provide for a hearing; and upon the presentation of any matter, in answer to the claim of the city, which properly raises an issue, the court can take proof pertinent to the issue thus raised. Under the drainage act, no provision is made for any particular

form of practice; yet *In re Ryers, supra,* contemplates that proof would be proper upon the issue of whether the improvement was for a public purpose or not. The same is true with respect to proceedings under the general railroad act, upon the coming in of the petition, when cause may be shown against it, but upon what papers or proof the statute is silent; yet no difficulty is experienced in disposing of the issues raised. So, here, the proceedings upon the one side, and the answer upon the other, presents an issue sharply defined, and it is this issue upon which the court is to take proof, and determine whether a proper case is presented for the appointment of commissioners. The conclusion is therefore reached that the owner was entitled to be heard upon the questions raised, and that it was error to reject the answer and proof. The order appointing the commissioners should be vacated and set aside, and a hearing ordered upon the issues raised.